HENRY WAYMAN AND
RICH'D G. STOCKETT
vs.
ANNE JONES AND OTHERS. } MARCH TERM, 1850.

[DUTIES AND LIABILITIES OF TRUSTEES—EVIDENCE—CHANCERY PRACTICE.]

IF any portion of the trust fund has been misapplied or destroyed, it is the duty of the trustee to communicate the fact to the court, and ask its sanction of the measures adopted by him to obtain redress.

The president and cashier are competent witnesses for the bank, to prove at what time a trustee had knowledge of the transfer of certain stock, part of his trust fund, standing on the books of the bank.

If a trustee acting on his own responsibility, receives any property from the party misapplying the trust fund, either in payment or as security for the payment of the amount due the fund, he must put the transaction in such a position that its character may be easily understood, and any bad consequences flowing from the obscurity of the transaction, must fall upon him.

Though a portion of the trust fund is entrusted to the supervision and control of one of two trustees, yet if any fact endangering its safety comes to the knowledge of the other trustee, he is bound to see to its security and communicate the fact to the court and his co-trustee.

If a trustee acting upon his own discretion, makes an investment of trust funds without the sanction and approbation of the court, he will be responsible for any losses thereby incurred.

An order passed by the court upon petition, of one of the *cestui que trusts*, directing the trustee to account for a portion of the trust fund, and specifying to some extent the responsibility incurred by him, does not finally determine any right and is not conclusive on any of the parties to the case.

An order confirming an Auditor's report, is an order in the nature of a final decree.

---

[The facts in this cause will be found set out at length in the case of *Jones and wife* vs. *Stockett*, 2 *Bland*, 409 to 436, and in the case of the *Farmers and Mechanics Bank et al* vs. *Wayman and Stockett*, 5 *Gill*, 336 to 358. It is the proceedings in Chancery which occurred after the cause was remanded by the decree of the Court of Appeals, in 5 *Gill*, 358, that are now to be reported. The following brief synopsis of facts taken from these cases will suffice for an understanding of the opinions here reported.

Wayman and Stockett were appointed trustees by the will of Larkin Shipley, deceased, executed in 1821, to invest a legacy of $7000, given by said will to the testator's niece, Anne Shipley, who subsequently married Samuel Jones, by whom she had several children. By the terms of the bequest the trustees were to put the principal of the legacy out at interest on good security, and pay the annual interest thereof to the said Anne during her natural life, and if she should die leaving lawful issue, then to divide the principal equally among her children. The trustees, by the order and sanction of the Chancellor, on the 20th of April, 1826, invested $3552 of this

trust fund in the purchase of 222 shares of the capital stock of the Bank of Westminster. This stock was transferred on the books of said bank to Wayman and Stockett, *as trustees* under said will, for the benefit of Anne Jones, wife of Samuel Jones. This bank, by virtue of the acts of Assembly, explained and stated in 5 *Gill*, 356, *et seq.*, was afterwards divided into two branches, and its name and location changed, the mother bank under the name of The Farmers and Mechanics Bank of Frederick, being located at Frederick, and the branch continuing at Westminster, under the name of the Bank of Westminster. By this change, and through default of the banks, the stock in question, in 1829, stood upon the books of the mother bank at Frederick in the name of "*Anne Jones, wife of Samuel Jones*," and on the 14th of June, 1830, the whole of it was transferred by said Jones and wife to various purchasers.

Wayman, one of the trustees, had notice of this illegal transfer a short time after it was made, and instead of bringing the matter to the notice of the court, proceeded to obtain reimbursement therefor, by receiving transfers of stock, &c., from Jones, and after his decease in 1831, from his wife, as his administratrix, in the manner described in the opinions here reported, and it is chiefly as to his liability in the premises that the questions decided in these opinions have reference. They were delivered by the *Hon. Nicholas Brewer*, Associate Judge of the third judicial district, to whom the cause was certified by the Chancellor, (he having been of counsel in the cause,) upon exceptions to the reports and accounts of the Auditor. These exceptions are numerous and lengthy, but need not be stated, as the substance of the most important of them sufficiently appears from the opinions themselves.]

OPINION BY JUDGE BREWER:

The Court of Appeals, in this case, have determined that the Farmers and Mechanics Bank of Frederick and the Bank of Westminster, are eventually liable to the *cestui que trusts* for the amount of the stock transferred by Jones and wife by

their permission, but that the administratrix of Jones is first liable to the amount of the assets in her hands, and Wayman also and before her, to the amount of any sums received in payment, or of any stocks or other property transferred as securities, which had been lost by his default; but the court was prevented from coming to any conclusion on the whole case in consequence of the imperfect and unsatisfactory nature of the testimony as to the character of the transfers made by Mrs. Jones to Wayman, and to the question whether the loss of the property so transferred was attributable to any act of his, for which he could be held accountable. No further testimony having been taken as to these points, this court is compelled to decide, as the Court of Appeals might have done, upon the testimony as it stands, however imperfect it may be.

The obscurity of the transaction, and consequent difficulty in the cause, arises, in a great measure, if not entirely, from the conduct of Wayman in undertaking to obtain redress for this illegal transfer, without communicating the fact to the court or asking its sanction of the measures adopted by him, both of which it was his duty to have done, and the omission of which if not inexplicable, is certainly difficult to explain. It must have arisen either from collusion with Jones in the transfer, probably from motives of kindness to him, or from a subsequent unwillingness to expose the transaction, which, from the testimony of Hardesty, he seems to have considered very culpable.

Wayman states, both in his answer to the bill of Jones and wife, and in the bill of Stockett and himself against them, that he was ignorant of the transfer until a short time before, but it is clearly proved by Beall and Morgan that he knew of it a few days after the transfer. Exceptions were filed to their testimony on the 14th of March of the present year, but they certainly come too late after the case has been to the Court of Appeals and their decision based upon that testimony; but if not too late, they do not appear to be sound. The object of the bank was not to prove Wayman's knowledge of the transfer. That had been admitted by Wayman in the bill, and the bank

had, therefore, a right to presuppose it in their interrogatory; but their object was to prove the early period of this knowledge. The testimony of these officers is from their own knowledge, and I can see no liability to the bank which would make them interested witnesses.

It seems to me to have been the duty of Wayman, undertaking to act upon his own responsibility in receiving any property, either in payment of the amount due to the trust fund by Jones, in consequence of this transfer, or as security for its payment, to have put the transaction in such a position that its character might be easily understood, and that any bad consequences flowing from its obscurity ought to fall upon him, and that the *cestui que trusts* have a right to give it in that case either character, as it may be most advantageous to them.

It is stated by Wayman, in his answer to the first petition of Jones and wife, in explanation of the transfers of stock to him, that he, as trustee, had, about June, 1830, purchased from Jones, stock of the Farmers and Mechanics Bank to the amount of $850, which purchase was sanctioned by the Chancellor, and that he had subsequently purchased of Jones ten shares more, in the whole, twenty-seven shares, amounting to $1370, which, he believed, had been transferred, but that Jones neglected to make the transfer, and that the transfer to him by Anne Jones, the administratrix, of thirty-four shares of that stock, as well as the deposit of $1040 in the Savings Institution, was intended to secure the trust fund from any loss in consequence of the said neglect, and that it could not have been on account of the stock abstracted from the Farmers and Mechanics Bank of Frederick, because he was then ignorant that the stock had been so abstracted.

So much of this statement as relates to the $850 seems to be correct. It appears from the proceedings that the purchase was authorized, and was treated as having been made, though as the Auditor remarks, it would seem from Jones' letter as indefinite as it is, that the transfer had been made, but it does not appear that that stock ever constituted a part of the trust fund, and if such transfer had been made about that time, it might

easily have been shown by any of the parties interested from the transfer books of the bank. In reference to the other ten shares, nothing can be found in the proceedings, and there is no evidence either of the purchase of them from Jones or the payment of the purchase money.

Mrs. Jones was entitled to, and received, the dividends on this stock, so that the principal only was due to the fund from her upon a settlement with her. It is highly probable, therefore, if not absolutely certain, that the stock transferred, to the amount of $850, was intended as a compliance with Jones' contract, but not as to the ten shares, relating to which there is no proof. Wayman himself seems to have so treated it by going to the Orphans Court to obtain her a credit upon her account for it.

But why should he have taken a transfer of so large an additional sum as the residue of that stock and the deposit in the Savings Institution? There seems to have been no rational motive for it, and it is contradicted by the testimony of Hardesty, and the disproof of Wayman's answer as to his want of knowledge of the transfer of Jones and wife of the stock in the Westminster Bank, from which it may be fairly inferred that the said residue was taken as a reimbursement *pro tanto* of that stock. Mrs. Jones was permitted to receive the interest and dividends, which was improper if it was only a security and a balance, and was due, and the conversion of the deposit into stock is proved to have been at his instance, and in fact could not have been done but by his approbation. Whether this will make any difference as to Wayman's liability is another question, and which seems to be left open by the decision of the Court of Appeals.

Wayman having taken the transfer as reimbursement of the abstracted stock, and treated it as an actual and permanent investment on that account, ought to have reported all those matters to the court for its approval, but supposing the investment to have been a good one *at the time*, in the estimation of those skilled in such matters, as is clearly proved, and, therefore, such an one as to which no reasonable objection could have been made,

42*

and the court, therefore, would have approved, would the mere circumstance of the trustee's neglect to report it, make him liable for any loss that should ensue? But little light is thrown upon this question by the opinion of the Court of Appeals. They say, "nor does it appear to us, satisfactorily, if the same had been transferred merely as a security, whether any act of Wayman for which he could be held accountable, conduced to the loss consequent upon the failure of that institution." 5 *Gill,* 354. From this we may infer, that if the transfer had been made as a security merely, Wayman would not be liable for the loss unless brought about by some interposition or agency of his, which is not pretended, but if *transferred as payment,* his liability for the loss is left by the opinion in considerable obscurity. It seems to have been considered important to ascertain for what purpose the transfer was made, but as to what liability Wayman would incur in consequence of having taken the transfer in payment, no further opinion is intimated.

It would, at the first view, appear to be hard that Wayman, having taken stocks esteemed perfectly good in the market, and such as the court, in all probability, would have approved as an investment, should, from his neglect alone to communicate the transaction to the court, be so severely punished for the consequence which may probably have resulted from his delay. But upon a further consideration, it will be found, that other facts have an important bearing upon the question.

The portion of the trust fund consisting of the abstracted stock, Wayman alleges, "he had nothing to do with," by which he seems to mean that it was the part intrusted to the supervision and management of his co-trustee, Stockett. But, notwithstanding this agreement for division of labor, if any fact endangering the safety of this fund came to his knowledge, he was bound to see to its security, and communicate the fact to the court and his co-trustee, and not, as he in fact did, take the management of it into his own hands, exercise his own judgment as to the value of the property transferred in payment, and conceal the whole matter from his co-trustee and the court. The court had, at one time, sanctioned the purchase of the Farmers and Mer-

chants Bank stock to the amount of $850, and that transfer of the stock in that bank being treated, *pro tanto*, as an execution of the contract for that purchase, Wayman is not responsible for that, but, *non constat*, that the court, at the time of the transfer, would have directed the purchase of the same stock as an investment. If the proposition had been made to the court, the parties interested would have had an opportunity of objecting to it, and might have shown its impropriety then, or the Chancellor might have considered it better to have made any *further* investment in different funds, or in another bank. The same reasons will equally apply to the deposit in the Savings Bank.

Wayman had made investments before, and therefore knew that the approbation of the court was required, and should be first obtained by him. It would be very dangerous to trust property to permit trustees thus to throw off the superintending power of the court, and not to be responsible for losses incurred by the exercise of their own discretion, although not incurred by any direct action in reference to the management of the fund. I think, therefore, that Wayman is responsible both for the diminished value of the residue of the stock of the Farmers and Merchants Bank above the $850 purchase, and for the amount lost in the Savings Institution. He is liable also for simple interest from the time of the transfer, except where Mrs. Jones has received the dividends to which she was entitled, unless they may be required to make up the amount for which she is responsible. As to the $1,000 received from Hardesty, it is admitted that Wayman is responsible for it, with interest from the time of the receipt.

Mrs. Jones, as administratrix of her husband, is responsible for the residue of the abstracted stock remaining due after the deduction of the value of transferred stock, for which Wayman is decided to be responsible, and can receive nothing until that be paid, the Court of Appeals having so decided. She is also responsible as distributee for the amount of her husband's estate distributed to her, and the other distributees, her wards, are also answerable for the amount received by them from the estate of their father, and which ought to have been applied to

making good the deficiency in the trust fund occasioned by the abstraction of the bank stock, to the relief of Mrs. Jones also to that extent. The banks, according to the true construction of the opinion of the Court of Appeals, as contended for in the third and fifth exceptions of Stockett, can only be discharged from their responsibility by satisfaction actually made by Wayman and Mrs. Jones, as to the extent of their liabilities. They are also responsible each for the whole amount ascertained in Stockett's first exception. These views appear to dispose of all the disputed points on the exceptions, and an order may be drawn accordingly, and referring the case again to the Auditor, to make the necessary alterations in the accounts.

———

[The preceding opinion was delivered on the 2d of June, 1850, after which the cause again came before the court upon further exceptions to the Auditor's report and accounts, when the following opinion was delivered by the Judge, on the 18th of July, 1850.]

———

OPINION BY JUDGE BREWER:

This case comes up again on exceptions to the Auditor's report of June 20th, 1850, and some of the former exceptions not acted upon. The exception of Stockett, and the first exception of Wayman, are ruled good in part only. That portion of the former order of June 2d, which would charge Wayman, being founded in error as to the fact. The Auditor's report of the 2d of February, 1831, and the trustee's report of the 23d of June, 1830, which would have shown the error, were not among the papers selected and sent to the court, and the Judge relied on the information of the counsel, who were also misled. The fact is now admitted, that Wayman purchased from Jones twenty-seven instead of seventeen shares of Farmers and Merchants Bank stock, and that the purchase was sanctioned by the court. Of course, he is not to be charged with any loss on that amount of stock by depreciation, but is to be charged with the loss on the seven shares now agreed to be taken as an investment at the former selling price. Wayman will, of course, be credited with these seven shares.

Wayman should not be charged with interest on the $1040 of the stock of the Maryland Savings Institution during the time that Mrs. Jones received the dividends, but from the time she ceased to receive them. As to the banks and the children of Mrs. Jones, the *cestui que trusts* in remainder, at least he should be charged with interest. Wayman's third exception is, therefore, ruled good as to part, and overruled as to the residue accordingly. Wayman should also be charged as to Mrs. Ann Jones with the dividends or interest in case there be no proof of dividends, of the twenty-seven shares of Farmers and Merchants Bank stock, from the time of their purchase to the date of the transfer, according to the exception of Mrs. Ann Jones, which is ruled good, but not as to the banks or the *cestui que trusts* in remainder.

Wayman is right in his fourth exception, as the administratrix of Samuel Jones should be charged with the amount of abstracted stock not received by him, (Wayman,) or which he is responsible for, but that would not affect the state of his account. The fifth exception is also right if Mrs. Jones has not already been charged with the sum, but I do not see how Wayman can be credited, he being charged only with what he received.

It was not intended by the order of June 2d, that Mrs. Jones should be charged in this case individually in the second place, but that the estate of her husband, Samuel Jones, should be, and for whatever that was liable, it being distributed, she and the other distributees should contribute in proportion to their distributive shares.

Wayman's sixth, seventh and eighth exceptions are overruled. It is clear, from the opinion of the Court of Appeals, that Mrs. Jones is not to be made liable individually for any portion of the abstracted stock, unless her husband, Samuel Jones' estate should be insufficient.

It was contended by the counsel for Wayman on the first argument in this case, that Mrs. Jones was bound, by the decree of the Chancellor, passed on the 23d of October, 1846, on her petition against Stockett and Wayman, she not having appealed from it, and, therefore, although Wayman should be charged

with the amount of the stock of the Savings Institution with reference to the banks and *cestui que trusts* in remainder, yet, as regards Mrs. Jones, he is not to be charged with it. The effect of this would be, not that Mrs. Jones would be charged with it, but that she would lose her interest or dividends on that amount. The decree could not affect her husband's estate, as the petition is filed by her, and revived by her husband and herself in her own right and not as administratrix, and nothing more is decreed than that Wayman was not responsible.

But how is she bound by that decree? It was passed on the 23d of October, 1846. The decree in the present case, was passed on the 15th of November, 1845, from which an appeal was entered by Mrs. Jones on the 11th of February, 1846. On that appeal the court decided that Wayman, though complainant, may be required to account as defendant, and would be answerable for this stock, or not, according to the further proof to be taken. Such of course ought to have been the decree of the Chancery Court, and all those interested in this part of the trust fund being parties in this case, and it being perfectly competent for the court to decide all the interests in the case, the decree, as it is called, of the 23d of October, 1846, or rather the *order*, could not be properly passed, and must be superseded by the final decree or order in this case.

But is that decree or order conclusive upon this court, even confining the question to that case? Here is a trust fund invested by the court and in the hands of the trustee. By some means the trust fund is abstracted, and one of the *cestui que trusts* alleging that the trustee has obtained stocks and money from the person so abstracting it, by way of reimbursement, files *a petition in that case*, which is the usual mode of proceeding, calling upon the trustee of the court to account for these funds, and the Chancellor passes an order directing the account to be stated, and specifying, as is supposed, to some *extent*, the responsibility incurred by the trustee. There is no formal proceeding by original bill and answer. The Auditor states an account accordingly, but recommending a suspension of final action in the case until a decision is had in another case, where

all those interested in the fund are parties, and the Chancellor acting on that report, confirms it in part, to wit, as to the money received, but further says, "for the reasons stated by the Auditor in his said report, I do not consider it proper, at this time, to pass any order in relation to the stock referred to in the account A. No. 1," and with regard to this stock no further decision has taken place to this day.

It is obvious, that the Chancellor did not consider the order of the 23d of October, 1846, conclusive on him, else why reserve further action upon it? It is not clear, that the Chancellor intended to express the opinion imputed to him. He says, "it being stated in the petition that certain stocks were transferred to the trustees to be held as a means of enabling them to obtain an indemnification from certain losses, arising from the misapplication of the trust estate as therein mentioned, it follows, that they must be allowed to continue to hold the same until the amount of such losses have been ascertained, and further order, and cannot be charged with its depreciation or becoming valueless *during the time of its being so held by them.*" He might have meant during the future holding under his order, but if he meant the whole time, the order does not appear to me to be conclusive upon any right of the parties.

The Chancellor proceeds further to decree an account from the pleadings and proofs in the cause, and from such *other proofs as may be laid before him.* He decides no principle here *without the decision of which* the account could not be stated. It is not like the case of *McDonald* vs. *Strike,* 2 *Har. & Gill,* 191, where it was upon an original bill absolutely necessary to establish the fraudulent character of the deeds before any account could be decreed, nor the case of *Thompson* vs. *McKim,* 6 *Har. & Johns.,* 302, where the Chancellor decided upon the construction of an agreement upon which the whole case depended, and directed money to be brought into court in consequence of his decision; nor like the case of *Williamson* vs. *Carnan,* 1 *Gill & Johns.,* 184, where the defendant was, by the order of the court, compelled to do an act in derogation of his rights. But this case is very like that of *Hagthorp* vs. *Neale,* 1 *Gill & Johns.,* 270, where the Chancellor not only directed an account, but

expressed his opinions decidedly on many items of the account, yet it was held, these opinions were subject to the review of the Chancellor, and the whole case only to be acted upon after the report, and, therefore, that an appeal did not lie. The case of *Hungerford* vs. *Bourne*, 3 *Gill & Johns.*, 133, is a case also in point. This case is as strong as either of the last two cases, for the Chancellor merely expresses an opinion as to some of the items of the account and leaves the whole matter to be finally adjudicated upon, according to the aspect of the case when further testimony which might possibly materially affect it should be taken and the report and account filed. No right being finally determined by that order it cannot be considered as conclusive on any of the parties to the case.

This question seems also to be settled by the act of 1830, ch. 185, sec. 1, which provides that "no appeal shall be allowed from any order or decree unless it be a *final decree*, or *an order in the nature of a final decree.*" What a final decree is we need not say. An order in the nature of a final decree is just such an one as the Chancellor has declined to pass in this case, to wit, "an order confirming the Auditor's report." See 2 *Bland*, 264, *Contee* vs. *Dawson*.

This case has not been argued upon the exceptions of Mrs. Anne Jones to either of the reports and accounts of the Auditor, so that a decision on some of the points in which she was interested, and which is now desired, was neglected.

With regard to her exceptions filed on the 12th of January, 1850, the second exception is overruled. As to the first and third, the amount charged against Wayman by account A., should be lessened as to Mrs. Jones, by interest on the Farmers and Merchants Bank stock, during all the time that she received the dividends, but he is to be charged further, according to her exception last filed, with interest, from the time of the purchase to the time of the transfer. His account is not to be lessened by the principal of the Savings Institution stock, nor by the interest, except during the time that she received the dividends.

As to the exceptions to the accounts B. and C., the Auditor will be governed by the same principles decided on in the account A.

I am not aware of any other matter now in dispute in the case, except the question of costs. Any costs incurred or paid by Stockett alone, if there be such, should be paid out of the funds, as they were not incurred by his default or misconduct. The banks cannot be allowed costs, as the litigation in this matter never would have taken place but for their negligence, nor can Wayman be allowed costs, he being equally culpable. The costs of Mrs. Jones and the *cestui que trusts* may be allowed out of the fund, as it will in that case fall upon them in nearly just proportions in consequence of their respective interests in the fund.

[On the 6th of December, 1850, a further opinion was delivered in the case, upon the submission of the corrected accounts for ratification.]

OPINION OF JUDGE BREWER:

This cause is again submitted on the Auditor's report of August 13th, 1850, and the accounts corrected in pursuance of the order of the court, of July 18th, 1850. The accounts F., G., J. and K., corrected, seem to be in conformity with that order. Mrs. Jones is not, however, to be charged with any portion of the interest which would otherwise have been payable to her, to the exoneration of her husband's personal estate, from which she is to contribute one-third. Accounts F., G., J. and K., corrected, are, therefore, hereby ratified and confirmed, and a decree or order may be prepared in conformity therewith, with the exception above stated.

Accounts J. No. 1, and K. No. 1, corrected, are rejected. The decision as to costs will be governed by the order of July 18th. The expense of stating the accounts, to wit, Auditor's fees, although charged by him to the banks, are not more their costs than the costs of the other parties, and should be paid in equal proportions by the banks, Wayman, and Mrs. Jones, as administratrix of her deceased husband.

A. RANDALL, for Wayman.

MCLEAN and ALEXANDER, for the other Parties.