JOHN PERRIN *vs.* THOMAS KEITHLEY AND OTHERS.—*December* 1850.

A decree was passed in September 1828, for the sale of a deceased's real estate to pay his debts, and appointing a trustee to make the sale, who filed his bond, which was approved, but made no report of sales, and nothing further was ever done by him in chancery. In October, 1847, three of the children of the deceased, filed their petition in the case, charging that the trustee had sold the property and received the money, but had never paid over the balance to which they and others were entitled, and praying the appointment of a new trustee to collect and distribute the proceeds of sale. The former trustee being dead, a new trustee was appointed, who gave bond and was proceeding to re-sell the real estate of the deceased, when the purchasers under the original trustee filed their petition averring that they became purchasers of the land from said trustees at public sale, on the 2nd of May, 1829, for a full and fair consideration, which they had paid to the trustees, and had ever since been in possession of the said property, and had made improvements thereon. Upon proof establishing the allegations of this petition, it was HELD, that under these circumstances, the sale by the original trustee ought to be affirmed.

APPEAL from the *Court of Chancery.*

This case originated in a creditor's bill filed in the court of chancery, on the 9th of December, 1826, by *Samuel Harrison,* a judgment creditor of *John Merchant,* deceased, against *A. B. Harrison,* the administrator, and *John Perrin* and others, the heirs at law of said *John Merchant,* for a sale of his real estate to pay his debts.

A decree was accordingly passed at September term, 1828,

and *A. B. Harrison* was appointed trustee to make the sale, who, on the 19th of November following, filed a bond, which was duly approved. The evidence taken in the case previous to this decree, established the fact of the insufficiency of the personal estate of the deceased. The only claim proved against his real estate, was that of the complainant, *Samuel Harrison,* founded on a judgment for $261.

No further proceedings were taken in the case until the 22nd of October, 1847, when *Eliza, Susan* and *Joseph Merchant,* three of the children of the deceased, filed their petition, in which, after setting out the previous proceedings, they stated that the trustee, *A. B. Harrison,* made sale of said real estate about the year 1828, for about $5000, although his sales were never reported to the court; that although he had received all the purchase money, he had never paid over the balance to the persons entitled, of whom the petitioners were three. They further alleged the death of the trustee subsequent to said sales, and receipt of the purchase money, and prayed for the appointment of a new trustee to *collect and distribute* the proceeds of sale.

Upon this petition, an order was passed on the 22nd of October, 1847, appointing *John Glenn* trustee in place of said *Harrison,* and this order further states, that "it being represented to the court that the former trustee had made sale of the trust property, and it appearing by the proceedings in the cause that said former trustee had made no return of his proceedings to this court, it is further adjudged," &c., that the trustee hereby appointed, "proceed to collect the money for which the trust property was sold by the former trustee, provided upon investigation such should turn out to be the case," and to bring the said fund into court, and "shall have power and authority to adopt such other means as may be necessary aad proper to bring the trust so reposed in him to a close." *Glenn* declining to act, *John Perrin,* the appellant, was appointed in his place, accepted the trust, and filed his bond on the 26th of May, 1848.

On the 24th of June, 1848, *Thomas Keithley, William*

*Skinner, Edward Sears, John R. Caulk, Samuel Blades,* and *Elizabeth,* his wife, filed their petition, stating the appointment of *A. B. Harrison* as trustee, and that on the 2nd of May, 1829, he proceeded to sell the real estate of *John Merchant,* and sold one lot in the town of *St. Michaels,* in *Talbot* county, to *Thomas Graham,* from whom it was afterwards bought by the trustee, and sold to said *Keithley;* another lot in said town to the complainant, *Samuel Harrison,* whose executors afterwards sold the same to *John B. Jefferson,* who has since sold one-half to *William Skinner,* and the other half to *Edward Sears;* another lot of land in *Talbot* county, called *Fairplay,* to the complainant, *Harrison,* who has since sold it to *William Hambleton,* who sold to *John R. Caulk;* and also a house and lot in said town to *Levi Blades,* which has since come into the possession of *Samuel* and *Elizabeth Blades,* and to which the heirs at law of *Edward Blades,* one of the children of *Levi Blades,* were entitled. That the whole amount of sales was only $265, the first lot having sold for $16.50, the second for $87, the third for $131.50, and the fourth for $30. The petitioners alleged the full payment of all the purchase money to the trustee, and that the property sold for its full value at the time of the sale, and that the purchasers and those claiming under them, had so improved it as to increase its value to ten times what it was when sold. They further alleged, that the new trustee had advertised the property again for sale, to their great damage, as they had not yet obtained a complete title from the court, and prayed that he might be restrained from so doing, that they might be permitted to take testimony to establish their title, and that on this being done, the trustee might be required to execute to them sufficient deeds for the property purchased by them.

The chancellor then, on the 14th of June 1848, passed an order upon the petition, requiring the trustee to desist from selling, with leave to the parties to take testimony on the usual notice. The trustee in his answer to this petition, states that he had married the eldest daughter of *John Merchant.* He denies knowledge of the lease pretended to have been made by the

former trustee. If such were made, he avers his belief that they were made at gross undervalues, and by collusion between the trustees and *Samuel Harrison*. He denies that any report was ever made of such pretended sales, and does not believe that the pretended purchase money was ever made. Testimony was then taken and returned.

The following facts were, in the opinion of the chancellor, conclusively established on the part of the petitioners. *First.* That a sale was made by the trustee on the 2nd of May, 1829, to the parties mentioned in the petition, and that the prices given by the purchasers for the several parcels of property, were at the time, fair and reasonable. *Second.* That the sale was a public one, in the presence of a considerable number of persons, and that there was competition among the bidders. *Third.* That the purchase money has been paid to, or settled, with the trustee, and that the purchasers and those claiming under them, have been for a long time in the possession of the property, and have made improvements to some extent.

The objections to the ratification of the sale, were: 1st. That the sale was not made at the time and place mentioned in the printed advertisement filed among the proceedings. The time as advertised, was the 21st of March, 1829, and the place at the court house door in *Easton*, whereas the sales actually made, were made on the 2nd of May following, and the place, *St. Michaels.* 2nd. That the trustee did not make a report of his sales as directed by the decree. 3rd. The statute of frauds was urged not by way of plea or exception to the sale, made in writing, but *ore tenus,* and by way of argument.

The chancellor, (Johnson,) on the 19th of February, 1849, passed an order finally ratifying the sales made by the original trustee, and requiring the present trustee to desist from re-selling the property. The chancellor's opinion accompanying this order, is reported in 1*st Md. Ch. Decisions,* 331. From this order, *John Perrin* appealed.

The cause was argued before SPENCE, MAGRUDER and FRICK, J.

J. Shaff Stockett and Alexander, for the appellants, contended for a reversal of the chancellor's order for the following reasons:

1st. That upon the whole testimony legally admissible, it is not shown that the former trustee did sell the property, as alleged.

2nd. That the proceedings of the trustee, in relation to said pretended sales, were fraudulent and collusive.

3rd. That the petitioners are not entitled to the protection of purchasers for fair consideration and without notice.

4th. It is insisted on the contrary, that they knew, or had sufficient notice of the defects in their title.

5th. That no presumption can fairly be made in their favor.

Daniel M. Thomas and McLean, for the appellees, insisted for an affirmance on the following points:

1st. The order of 22nd October 1847, does not authorise the new trustee to sell, but only to collect and distribute the funds received by *A. B. Harrison;* and the petitioners admitted that a sale had been made, and the purchase money paid.

2nd. If the sales be fair, whether the purchase money was paid or not, the heirs of *Merchant* have no interest to entitle them to proceed against the property, because the debt of the complainant absorbed the whole.

3rd. The purchasers from complainant are certainly to be protected, because the debt due to him was not satisfied by his purchases, and he must be considered as having *paid* to the extent thereof.

4th. The payment of the residue is to be presumed, as the complainant has taken no steps to obtain it since the trustee's death.

5th. If the sales were fair, and the circumstances show a payment, or a presumption of payment, the court will not disturb the purchasers or their grantees, who have held the property so long, and made improvements thereon. Particularly at the instance of parties who have no interest in the question of payment.

6th. The trustee was the agent of the court, and his acts may be ratified by it however irregular his proceedings were, provided no harm appears to have been done to any one; and particularly, as it appears that notice was once given in conformity to the decree.

7th. The proper remedy of the heirs, if they have been injured, was against the trustee, in the first place, and having been deprived of that by their own *laches,* they cannot now proceed against the terre-tenants.

8th. The statute of frauds would not apply to this case, even though it had been properly pleaded, which it has not.

MAGRUDER, J., delivered the opinion of this court.

At September term, 1828, a decree was passed by the chancellor, to sell the real estate of *John Merchant,* deceased, in order to pay his debts; the personal estate proving insufficient. *A. B. Harrison* was appointed the trustee to make the sale, and on the 29th of November in that year, filed his bond, which it appears was approved by the chancellor. Nothing further was ever done by the trustee in the court of chancery.

On the 22nd October, 1847, three of the children of the deceased filed their petition in the chancery court, in which it is charged, that the trustee made sale of the real estate of the deceased, about the year 1828, for about $5,000, but the sale never was reported by him to the court; that he had received the purchase money, but had never paid over the balance, to which the petitioners and others were entitled. The petitioners ask the appointment of a new trustee, (the former trustee being dead,) to collect and distribute the proceeds of sale. *John Perrin* was appointed the trustee, gave bond, and in 1848, advertised the real estate for sale. In consequence of this advertisement, *Keithley* and others, claiming the land by purchase, filed their petition asking, for the reasons therein stated, that the new trustee should be restrained from making the sale. These last petitioners allege the sale to have been made in May, 1829; mention to whom the land was sold, first by the trustee, and afterwards by persons who claimed under

53    v.9

the trustee. In this petition we are told at what price each parcel was sold; that the property sold for its full value at the time of the sale, though it has been since improved and made of much more value. The purchase money, it is alleged, is paid.

The further object of this last petition, is to establish their title by testimony and to obtain a deed.

Upon this petition being filed, the chancellor passed an order to require the trustee to desist from selling, and authorising testimony to be taken. Much testimony was taken, and on the 29th of February, 1849, the chancellor ratified the sales, and from this order of ratification the appeal is taken, and is now before us.

It must be admitted, that for the conduct of the original trustee no apology is to be made. At the same time it must be said, that none of the other parties connected with the case are faultless. The purchasers ought to have taken care that the sales were reported and ratified. This was equally the duty of the heirs, unless, as the record authorises us to believe, they were satisfied that there would remain, after satisfying the claims of creditors, nothing to be distributed among them. If the purchasers themselves were in court asking to be released from their purchases, there might be found reasons for granting such relief. But neither creditors nor purchasers complain. It is in proof too, that although there was at least one other creditor, yet no creditor has ever appeared in this court, except the one who filed the bill of complaint, who was a judgment creditor, and whose claim exceeded the amount of the purchase money, according to the testimony before us.

It is with reluctance that we give a judgment which may seem to sanction such conduct in a trustee of the court of chancery, and yet it would seem, that under all the circumstances of this case, and when the whole of the purchase money it may be presumed, has been collected and paid over to the judgment creditor, that the sale, upon this proof, ought to be ratified, since the purchasers require it.

Several of the heirs, some time ago, filed a petition, com-

plaining of the conduct of the trustee, but it is charged by them, that he had made the sale, and received the purchase money. Only the husband of one of them appeals from the order of the chancellor ratifying the sale. He, too, is the person who, upon the petition of the heirs before spoken of, was appointed a trustee of the court to complete the trust. He was aware, that the object of the petition was to get a trustee to collect the purchase money and distribute it. Although authothorized by the decree to proceed to sell the premises if a sale had not taken place, yet it was his duty to proceed to collect the money for which the property was sold, provided, upon investigation, such should turn out to be the case, yet his first act is, to advertize that the property is to be sold, and when enjoined by an order of the chancery court, not to sell, he appears in that court, and admits that he does not know whether all or any of the sales were or were not made by the trustee.

As those who purchased the property or derive title from the purchasers, wish the sales to be ratified; as we have no proof that the property did not sell for as much as it was then worth, and as purchasers and those claiming under them, it is to be presumed have now been in possession of the premises twenty years, claiming the same under a decree of the court of chancery, and a sale made by its trustee, it is not thought right to reverse the chancellor's order of ratification.

Objections to a sale, if made by one party, are often entitled to no consideration, yet when they come from another, might require a sale to be set aside. Some of the objections urged in this case, are such as the heirs of the person whose real estate is sold, have no right to insist upon. The chancellor's order appealed from is affirmed with costs.

ORDER AFFIRMED.