## JOHN G. McCRORY ET AL. *v.* SARAH E. BEELER ET AL.

[No. 42, April Term, 1928.]

*Decided June 21st, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Alexander Armstrong* and *John Henry Lewin,* with whom were *Armstrong, Machen & Allen* on the brief, for the appellants.

*Harry Brindle,* with whom were *Brindle & Brindle* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

The will of Louise Bennett, admitted to probate by the Orphans' Court of Washington County, October 5th, 1906, in which her son, Frank L. Bennett, was named as executor, contains the following provision:

> "I hereby will and direct that all the rest and residue of my estate shall be held in trust by my said executor and the rents, income and profits arising therefrom, after paying all taxes, repairs and expenses, shall be equally divided amongst my other four children (naming them) so long as any one of them

may remain living; and if any of my said children should in the meantime die leaving a child or children, said child or children shall take their parent's share of such rents and profits. * * * Upon the death of my said children I will and direct that all my real estate shall be sold and my entire estate settled up and distribution thereof to be made to all my grandchildren equally who may be living at the time of such distribution, and if any such grandchildren shall in the meantime have died leaving children, such children shall take their parent's portion."

Upon the petition of the executor the Circuit Court for Washington County assumed jurisdiction of the trust created by the will, decreeing amongst other things that the trustee "administer his said trust under the supervision of the Circuit Court for Washington County sitting in equity, according to the usual practice of this court."

One of the properties passing under the will, and subject to the trust created by it, was a lot located on West Washington Street in Hagerstown, one of the principal streets of the town, improved by a three story brick building, with two storerooms on the ground floor and dwellings on the second and third floors. On July 14th, 1910, the trustee executed a lease of a part of this property to John G. McCrory. This lease was assigned to the McCrory Stores Corporation on March 7th, 1924. It leased to the lessee the ground floor and basement of the entire building upon the lot mentioned for a term beginning April 1st, 1911 and ending March 31st, 1929, and was made subject to certain other leases of said property which expired March 31st, 1912. The rent reserved for the first year, ending March 31st, 1912, was one dollar; for the next two years, ending March 31st, 1914, $600; for the next five years, ending March 31st, 1919, $1,625; for the next five years, ending March 31st, 1924, $1,860; for the next five years, ending March 31st, 1929, $2,100. The lease also provides that the lessees shall have the right to change the stairway leading from the ground floor to the second floor, as well as to move it from its place in the center

of the building to either side thereof, and in the event the stairway is moved the lessee is required "to make also such change on the second and third floors as shall be necessary to connect the rooms on said floors with said new stairway." It also gives the lessee the right to put in an entire new front on the first floor of the building at his own expense, without any provision as to any of these changes being subject in any way to the approval of the trustee. The lessee is given the right at his own expense "to repair, alter and improve the storerooms in the building hereby leased and in addition thereto to build such further improvements in the rear of said building as he shall desire for the purpose of carrying on his business," but makes no provision for the approval by the trustee of such alterations, either as to their character or extent. The lease further provides that the lessor shall keep all buildings, "including any addition which may be constructed" by the lessee, wind and water tight during the term of the lease or any renewal thereof. The lease further provides that "if the party of the second part (lessee) shall have made improvements to the property hereby leased at an actual cost of $10,000 or more, on or before April 1st, 1929, * * * the lessee shall have the right, upon giving written notice to the party of the first part (lessor), of his intention so to do, six months prior to April 1, 1929, to renew this lease, with all its covenants and provisions, saving and excepting this provision relating to renewal, for a period of ten (10) years beginning April 1, 1929 and expiring March 31, 1939, at and for an annual rental of $2,100.

The assignee of the lease has given the lessor notice that on or before April 1, 1929, it will make improvements to the property at a cost equal to or greater than $10,000, and has signified its intention of renewing the lease for the term stated above.

On August 23, 1926, Sarah E. Beeler, Lou M. Seaman and Edith Dillon, three of the four children of Louisa Bennett mentioned in the paragraph of the will quoted, filed their petition praying that this lease be decreed to be null and void. Mrs. Seaman has died since her petition was filed.

It is conceded that the trustee did not ask the court's approval of the lease and that the lease was not brought to its attention until the petition for its cancellation was filed. There is no dispute that the rent has been regularly and promptly paid, and that from month to month the trustee has paid the other *cestuis que trustent* their respective shares of the rent, though he has made no report of his transactions as trustee to the court since the lease was executed. It is also conceded that the lessee has expended no part of the ten thousand dollars for improvements upon which its right to a renewal was conditioned.

The appellees contend that the lease was a disadvantageous one and should have been cancelled, chiefly because the trustee had not submitted it for the court's approval. The appellants' contention is that the lease as originally made was advantageous to the *cestuis que trustent* and should be approved *nunc pro tunc*. The chancellor took the former view and decreed the lease to be "invalid, null and void."

In all cases where the court assumes jurisdiction of a trust and directs the same to be thereafter administered under its direction, the trustee is thereafter required to secure the approval of the court for any acts wherein he undertakes to bind the estate. *Gottschalk v. Mercantile Trust Co.,* 102 Md. 521; *Abell v. Abell,* 75 Md. 44; *Kramme v. Mewshaw,* 147 Md. 535, 548; *Perry on Trusts* (6th Ed.), p. 474. In such case, however, the court does not exercise its discretion except to approve or disapprove the proposals or acts of the trustee. The trustee still manages the estate under the direction of the court, with an opportunity for the *cestui que trust* to be heard. *Abell v. Abell,* 75 Md. 44, 64; *Perry on Trusts,* sec. 476. "The theory of the judicial supervision of trusts certainly contemplates securing the authority or approval of the court for all important transactions requisite to the proper management and custody of the funds of the estate." *Gottschalk v. Mercantile Trust Company, supra,* p. 528; 29 *R. C. L.* 1283.

The appellants, however, do not even suggest that the lease does not require the approval of the court, even though seven-

teen years have elapsed since it was executed. Their contention is that the lease, when made, contemplated such an increase in rents to the *cestuis que trustent* over what they had hitherto received that it should be approved in the forum in which it was executed, on the theory that the court would have approved it then if its approval had been requested. The court has the power to ratify the acts of a trustee done for the benefit of those concerned without an application, if the court is of the opinion that such consent would have been forthcoming if requested. *Perrin v. Keithley,* 9 Gill, 412; *Gray v. Lynch,* 8 Gill, 403; *Abell v. Brown,* 55 Md. 217; *Perry on Trusts,* sec. 476.

The appellants also contend that the court can only consider the lease in the light of the time of its execution, and cite as authority therefor *Tyson v. Mickle,* 2 Gill, 376; *Brown v. Hazelhurst,* 54 Md. 30; and *Black v. Ligon,* Harper's Equity (S. C.), 205. This presupposes the performance by the parties of everything contemplated by the lease, which, in this case, does not appear. One of the provisions of the lease was that the lessee should have the right to make certain improvements to the building which, if they had been made at the time, probably would have cost more than the original building and would have so changed it as to have made the building hardly recognizable as the one leased. Such alterations as the lease provided for could only have been justifiable upon the assumption of one of two theories: the first, that they would be necessary to accommodate the building to the business requirements of the lessee, which is the owner of a chain of five and ten cent stores. But the appellants never occupied the property; they have rented the two storerooms to subtenants. The only other theory is that such improvements were necessary to induce others to rent from the lessee at the largely increased rents which the lessee had agreed to pay the lessor. But here we find that Providence has come to the rescue and, without expending anything on the building, the lessee's assignee now rents the premises for $375 per month and pays the lessor $175 per month, and the renewal provides for rental at the latter figure. The excess of rent

462

now received by the assignee over the rent paid by it under the lease would not be a factor if we were required to consider the lease only in the light of the day of its execution, and we might (though we do not so decide) be constrained so to consider it if the assignee had already put improvements to the extent of $10,000.00 on the property.

The lessee's assignee has given the lessor notice of its election "to renew said lease, and to be bound by all of the terms and conditions thereof as therein stipulated, for a further period of ten (10) years commencing April 1, 1929, and ending March 31, 1939." Inasmuch as it has not made any of the improvements upon which the right to a renewal must be predicated, its notice meant that it intended to expend $10,000 on the property before April 1, 1929. Three of the four *cestuis que trustent* have instituted these proceedings to set aside the lease, so that the lease is now before the court for its approval, and it cannot be seriously contended that a lease which calls for such extensive improvements does not require the approval of the court. The lease is before the court, with a condition attached to its approval hereafter to be performed. The renewal notice from the appellant to Frank L. Bennett was given June 1st, 1926, and no move toward the improvements required for a renewal has been made, and the fair inference to be drawn is that the appellant will incur no expense on the leased premises unless the lease is approved. The lease provided that "if the party of the second part (appellant) shall have made improvements to the property hereby leased at an actual cost of ten thousand dollars or more on or before April 1, 1929, the costs of improvements made from time to time to be endorsed on the back of the lease, said party of the second part shall have the right upon giving written notice to the party of the first part of his intention so to do, six months prior to April 1, 1929, to renew this lease * * * for a period of ten years beginning April 1, 1929, and expiring March 31, 1939, at and for an annual rental of twenty-one hundred dollars." It will be noted that the lease contemplated improvements made from "time to time," and

not improvements to be made barely in time to entitle the lessee to a renewal.

Under the circumstances here shown the court could properly consider the lease for eighteen years and the ten year renewal as two distinct proposals, with the renewal as a new proposition submitted for its approval.

It is the duty of the court to consider the welfare of the *cestuis que trustent,* and there can be no doubt that to permit the improvements to be made and the appellant to rent the property for ten years additional at a rental of $2,100 would work a great hardship on the appellees. The property, in the same condition as it was seventeen years ago, now rents for $4,500, and the court could not approve the renewal of a lease which would so seriously injure those who ought to be the objects of its consideration and concern.

As indicated, we think the lease of the property for eighteen years, expiring March 31st, 1929, can be considered apart from the renewal. The storerooms were rented in 1911 for eighty dollars per month, and without regard to any improvements, the lease was advantageous to the appellees. It provided after the first two years for rent much in excess of what they had received, and since April 1st, 1924, they have been receiving $2,100 per year. Although the term of the lease was much longer than was customary in Hagerstown in 1911, we can readily believe the court would have approved a lease to such a responsible tenant as the lessee, which so secured and improved the position of the appellees. The condition of the property has not been changed or altered, and so far as the lease for the original term of eighteen years is concerned, it presents a situation which the court can equitably regard as proper for the passage of an order approving it *nunc pro tunc.* The appellees have, since April 1st, 1924, received and will receive $2,100 rent to March 31st, 1929. They have acquiesced in and by their conduct approved it to that extent. They do, however, object to the renewal, even though the property would be improved. The improvements would not be for their benefit unless they survive the term, but would inure to the remaindermen, who would be benefited

at the expense of the *cestuis que trustent*. What the remaindermen are entitled to is the preservation of the property (21 *C. J.* 941), while the *cestuis que trustent* are entitled to such profits or benefits as the estate will produce, and the court will not approve a lease or investment which it does not consider to be for their advantage or protection. *Gould v. Chappell*, 42 Md. 466.

We are, therefore, of the opinion that the court should approve the lease as originally made for the term of eighteen years ending March 31st, 1928, without requiring the improvements to be made, and disapprove and cancel the provision for a renewal.

> *Decree affirmed in part and reversed in part, each side to pay half the costs, and case remanded for a decree to conform with this opinion.*