SAVANNAH JOHNSON ET AL. *v.* EDWIN H. WEBSTER, 2ND, ADMINISTRATOR AND TRUSTEE

[No. 55, January Term, 1935.]

*Decided May 13th, 1935.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Robert H. Archer* and *Morris Rosenberg,* with whom were *Herbert Levy* and *Tydings, Walsh, Levy & Archer* on the brief, for the appellants.

*William D. Macmillan* and *Lawrence Perin,* with whom were *Edwin H. W. Harlan* and *Semmes, Bowen & Semmes* on the brief, for the appellee.

SHEHAN, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Harford County dated November 2nd, 1934, wherein certain investments that had long been made by a trustee were ratified and confirmed in a *nunc pro tunc* order. Savannah H. Johnson in her own right and as administratrix of William Merryman Johnson, Maurice S. Harkins, administrator of Corinne Harkins, deceased, James M. Johnson, and Nora Harkins are appellants herein, they being beneficiaries under the trust.

On April 27th, 1925, the last will of James T. Johnson, deceased, dated August 20th, 1912, was duly admitted to probate in the Orphans' Court of Harford County. Under the third item or clause of this will, James T. Johnson, after making some minor dispositions of property, made the following bequest: "Third—within twelve months after my death, all my property both personal and

real, is to be sold by my Executrix and Executor hereinafter named; and the proceeds from such sale I give and devise to my wife, Augusta Rosena Johnson, during her natural life. After the death of my said wife, I give and devise to my daughter-in-law, Savannah Johnson, wife of Merryman Johnson, one thousand dollars; to my son, Merryman, five hundred dollars; to my daughter, Corinne, five hundred dollars; to my grandson, James Johnson, five hundred dollars; and the residue is to be equally divided between my two grandchildren James Johnson and Nora Harkins."

Augusta Rosena Johnson and William H. Michael were named as executrix and executor of the will. They entered upon the duties of their office, and apparently due administration of the estate was effected, and there was a balance in the hands of said executrix and executor of $5,260.23, which was held by them subject to the provisions of the third item of said will. Upon a proceeding instituted in the Circuit Court for Harford County in equity, jurisdiction was assumed by the court of the aforesaid sum of money in the hands of said executor and executrix under the said will, and J. Edwin Webster was appointed trustee to take charge of said funds and invest the same under direction and order of court. This decree was dated July 7th, 1926. The said trustee died on or about April 19th, 1928. His trusteeship therefore covered the period from July 7th, 1926, to April 19th, 1928.

Under a petition filed in said court, Edwin H. Webster, 2nd, was, on July 2nd, 1928, appointed trustee to administer the trust. During his trusteeship J. Edwin Webster had invested practically the entire trust estate in six per cent bonds of the United Railways & Electric Company, without previous order or authority from the court.

After his appointment as trustee, and on October 20th, 1932, Edwin H. Webster, 2nd, administrator of J. Edwin Webster, trustee, filed a petition and report in the said court setting forth the appointment of J. Edwin Webster,

trustee, and the fact that he had departed this life, as above stated, and that the book and accounts showed that J. Edwin Webster, deceased, had received the sum of $5,260.23 and $99.28 accrued interest thereon, and that, with the exception of $380.23 of the principal and $51.95 accrued interest, this sum of money had been invested in bonds of the United Railways & Electric Company. There are other details in said report concerning the collection and payment of interest, etc., which need not (in detail) be considered.

The petitioner then prayed:

First, that the investments of the trust funds so made by his decedent be approved and ratified by the court as of the dates of the investments.

Second, that the papers be referred to the auditor to state an account showing the true condition of the trust at the date of the decedent's death, etc., and for further relief.

Upon this petition there was a show cause order, and on October 20th, 1932, the defendants answered admitting the formal parts of the bill, averring that they had no knowledge of the investments set forth in the petition, and objecting to the ratification of the investments because there was a failure to have the Circuit Court for Harford County sanction and ratify the said investments, thereby depriving the trust estate of the protection of the court; and for the further reason that there was a failure to comply with Equity Rule No. 35 of the Circuit Court for Harford County, and the defendants alleged and averred that this resulted in a depreciation of the trust estate and caused the loss complained of.

There was an agreed statement of facts. Testimony was taken in the case, and after a hearing of all the parties a decree was passed on November 2nd, 1934, in which the investments were approved and ratified *nunc pro tunc* as of the date or dates said investments were made, and the papers in the case were referred to the auditor to state an account giving to the said trustee allowances for his investments, collections, and expenses, and the

objections filed by the defendants to the ratification of the investments were dismissed. From that decree this appeal is taken.

In addition to this there is a stipulation by counsel filed in the case, and presented to this court, that, although no order of the Circuit Court for Harford County was actually passed disallowing the exceptions filed by the appellants to the auditor's account, as set forth on page 20 of the record, it shall be considered that such an order was passed disallowing the appellants' exceptions, and that this appeal is to be deemed to be taken from such order, as well as from the order of November 2nd, 1934. And it was further stipulated and agreed that other than those grounds or objections raised in the appeal and set forth in the appellants' answer there are no grounds for objection to the ratification of said account, as set forth in the record on pages 20 and 21, and it was further stipulated that the opinion rendered by the chancellor, a copy of which is attached, may be used by the parties in this case to the same extent as if it had been incorporated in the record.

In the testimony taken in this case, it is clearly and definitely shown that these investments at the time they were made were such as would have been ratified if application had been made to the court having jurisdiction of the trust; and it is also conclusively shown that the trustee acted in good faith and with integrity in making these investments. The matter was taken up by letter with the person entitled to the beneficial life interest before and after the purchase of the securities, and with her brother, who approved the suggested investment. The investments were discussed with one of the judges of the court having jurisdiction. Other like investments had been approved by the court, both before and after these investments. Judge Harlan testified that if authorization had been requested before the investments were made he would have authorized them. It was shown that these bonds were listed by the Supreme Bench of Baltimore City as being proper investments for trust funds. With

evidence of this character before the chancellor, undenied and unquestioned, the decree of November 2nd, 1934, was passed and the appeal therefrom was entered.

In view of the petition and answer, and of the stipulations with respect thereto, filed in this case, it seems that the only question to be considered is whether or not the chancellor had a right in law and equity to pass the *nunc pro tunc* order from which this appeal is taken, and in that connection there is the further question: Did the failure of the trustee to secure an order of court approving the investments referred to, as provided by Equity Rule No. 35 of the Circuit Court for Harford County, and by the order of his appointment, render the trustee liable for loss in connection with the investments, where it is conclusively shown that the trustee, while not complying with the rule, exercised care and diligence, and acted in good faith, and made his investment in securities that would have been authorized by the court, had application been made to it at or before the time of the investment? This seems to be the sole question presented in this record.

The will of James T. Johnson did not name a trustee, and in order to carry out the provisions of this will J. Edwin Webster was appointed trustee "to take charge of said funds and invest the same under the direction and order of this court." It is contended by the appellant that this part of the decree, as well as the equity rule with regard to investments, were both violated in making these investments without first having the authorization or sanction of the court in so doing, even though the investments as made were of the character and under the conditions above referred to. The appellants further contend that in view of this situation the chancellor had no authority to pass the *nunc pro tunc* order more than eight years later, and after the loss had occurred because of the depreciation in values of the investments. There is much to be said with regard to these contentions and they have been forcefully presented and urged upon the court, and it must be conceded that, while the trustee acted in good faith at the time, nevertheless he should

have complied with the equity rule and should have observed the terms of his appointment as trustee, and should have obtained authority from the court to make these investments. Equity rules which have the force of procedural law are not made without purpose, and should be substantially complied with in all cases where they are intended to apply. Nevertheless it is true that such cases as these necessarily must depend upon the facts in the particular case, and the circumstances surrounding the parties and their transactions, and that no definite rule applicable to all cases can, with safety and certainty, be laid down; nor are rules of procedure to be taken as inflexible or as instruments whereby penalties, serious in character and consequences, may be inflicted upon those who violate such rules in letter, but not in principle. In the instant case, it is true that the letter of the equity rule was not obeyed, but it is equally true that the spirit of the rule was respected. We say this in view of the fact that when made the investments would have been ratified by the court.

No point is made in the briefs or in the stipulations that the trustee is sought to be held because of the length of time elapsing between the time of the investment and the filing of the petition. In the stipulation it is "agreed that other than those grounds or objections raised in this appeal, and as set forth in the appellants' answer, on page 18 of the record, there are no other grounds or objections to the ratification of the auditor's account."

The auditor's account allowed the investments in conformity with the decree of the court. There is nothing in the stipulation or in the evidence to hold the trustee responsible on a charge that he held the investments too long.

The averment that the failure to obtain authorization to make these investments resulted in the depreciation of the trust estate is not supported by the testimony. Neither authorization nor ratification would have affected the stability or value of the bonds; changed times and conditions produced the result.

It does not appear anywhere that the loss in this case was occasioned by the failure of the trustee to obtain the approval of these investments, and upon the above stated principles the trustee could not be held personally liable. "The court has the power to ratify the acts of a trustee done for the benefit of those concerned without an application, if the court is of the opinion that such consent would have been forthcoming if requested." *McCrory v. Beeler*, 155 Md. 456, 461, 142 A. 587, 588. In that case the application was made for a *nunc pro tunc* order ratifying a lease after the expiration of about seventeen years. It was held that the court could ratify the lease *nunc pro tunc*. In the instant case, the evidence clearly shows that the investments at the time they were made were for the benefit of the *cestuis que trust* and had the approval of at least some of the beneficiaries under the trust. The maxim is that "a court of equity will ratify that when done which if previously applied to, it would have ordered." *Phelps, Juridical Equity*, sec. 180.

This principle, as was said by that learned jurist, is "in every day application of the practice" and has the support of numerous cases in this state. The principle has been stated in a great variety of ways.

One of the best and most comprehensive statements of the rule is to be found in *Gray v. Lynch*, 8 Gill, 403, 404, as follows: "Where the trustee, without application to the court, does an act which, upon application, would have been ordered, and was, at the time it was done, obviously for the benefit of all concerned, his act will be ratified and affirmed, and held of the same validity as if previously ordered by the chancellor." That principle has been very recently declared in the case of *Carey v. Safe Deposit & Trust Co.*, 168 Md. 178 A. 242. See, also, *Cunningham v. Schley*, 6 Gill, 207; *Perrin v. Keithley*, 9 Gill, 412, 413; *Tyson v. Mickle*, 2 Gill, 376; *Hatton v. Weems*, 12 Gill & J. 83; *Reeside v. Peter*, 35 Md. 220; *Abell v. Brown*, 55 Md. 217; *McCrory v. Beeler, supra;* and see *Fox v. Harris*, 141 Md. 495, 496, 119 A. 256, 260, where it is stated: "Have the trustees acted in good

faith and exercised their discretion reasonably? In other words, have they acted as an ordinarily prudent man would act in investing his own money? This is the test in Maryland and in most jurisdictions when the question involved is the responsibility for losses of testamentary trustees invested with discretion to. make investments."

This doctrine is further amplified by a rule laid down in 65 *Corpus Juris*, page 729: "Whether a trustee, in making an investment of the trust fund, acted in good faith and exercised sound judgment, must be determined with reference to the situation at the time the investment was made, and not in the light of subsequent events which could not be reasonably anticipated."

In *Brown v. Hazlehurst*, 54 Md. 26, at page 31, it is said: "The adoption or rejection of the act must depend not on the events subsequently occurring, or the final result of the suit, but on the state of things existing and apparent at the time of the act done." It is true that the degrees of care and discretion of the conventional trustees and chancery trustees are somewhat different, but in this case we think that the facts are not sufficient to hold the trustee herein personally responsible for the losses occasioned by the depreciation in value of the investments, and the difference in the responsibility of these two classes of trustees is not such as would justify the holding of the one and the discharging of the other, upon the facts presented herein.

The questions here presented have been for many years the subject-matter of much litigation and have come before this court on numerous occasions and in a great variety of forms, and a review of some of the more important cases and other authorities may be undertaken with profit.

. "If a trustee is at a loss as to the mode of investment or if the condition of the parties or of the estate may seem to require a particular mode of investment, it is at once the duty and the privilege of the trustee to seek the instruction of the court, and thereby insure its protec-

tion." 65 *C. J.* 810, citing *Oesterla v. Gaither,* 90 Md. 40, 44 A. 1035; *Siechrist v. Bose,* 87 Md. 284, 287, 39 A. 745; *Milligan v. Pleasants,* 74 Md. 8, 9, 21 A. 695; *Heald v. Heald,* 56 Md. 300; *Jones v. Stockett,* 2 Bland, 409; *Contee v. Dawson,* 2 Bland, 264. "However, while the approval of the court, if asked for in advance, will effectually protect the trustee in case of subsequent loss, it by no means follows that the failure to apply to the court is in itself sufficient to cause such liability." 65 *C. J.* 810, citing *Gray v. Lynch,* 8 Gill, 403. "The only effect of such failure is to throw upon the trustee the burden of showing that the investment was such as the law permits, and that in the light of circumstances existing at the time it was made there was no imprudence in making it." 65 *C. J.* 811, citing *Wayman v. Jones,* 4 Md. Ch. 500. "It is the duty of a trustee to give the court all the information in his power in order to enable it to give directions most suitable to the true nature of the case, and such as may be alike beneficial to all concerned. 65 *C. J.* 811, citing *Jones v. Stockett,* 2 Bland, 409." "If he departs from the instructions thus sought and received, he acts on a responsibility which he must be prepared to vindicate." 65 *C. J.* 811, citing *Zimmerman v. Fraley,* 70 Md. 561, 17 A. 560.

In *Abell v. Abell,* 75 Md. 44, 64, 23 A. 71, 74, 25 A. 389, it was said: "And whatever their powers may be under the will, if the trusts created thereby are before such a court, 'and a decree has been made, the powers of the trustees are thenceforth so far changed that they must have the sanction of the court for all their acts.'" 2 *Perry on Trusts,* sec. 474; *Gottschalk v. Mercantile Trust & Deposit Co.,* 102 Md. 521, 526, 62 A. 810; *Whitelock v. Dorsey,* 121 Md. 497, 502, 88 A. 241; *Baer v. Kahn,* 131 Md. 17, 25, 101 A. 596; *Kramme v. Mewshaw,* 147 Md. 535, 128 A. 468. In the last named case, the distinction between conventional and judicial trustees is clearly defined.

"In all cases where the court assumes jurisdiction of a trust and directs the same to be thereafter adminis-

tered under its direction, the trustee is thereafter required to secure the approval of the court for any acts wherein he undertakes to bind the estate." *McCrory v. Beeler, supra; Gottschalk v. Mercantile Trust & Deposit Co.; Abell v. Abell; Kramme v. Mewshaw, supra*; and *Perry on Trusts* (6th Ed.) p. 747; 65 *C. J.* 677, and cases there cited.

In such case, however, the court does not exercise its discretion except to approve or disapprove the proposals or acts of the trustee. The trustee still manages the estate under the direction of the court with an opportunity for the *cestui que trust* to be heard. *Abell v. Abell, supra; Perry on Trusts*, sec. 476.

"The theory of the judicial supervision of the administration of trusts certainly contemplates securing the authority or approval of the court for all important transactions requisite to the proper management and custody of the funds of the estate." *Gottschalk v. Mercantile Trust & Deposit Co., supra*, 102 Md. 521, page 528, 62 A. 810, 813; 29 *R. C. L.* 1283; *McCrory v. Beeler*, 155 Md. 456, 460, 142 A. 587.

In *Tyson v. Mickle*, 2 Gill, 376, trustees were appointed by decree to sell. After two ineffectual attempts to sell publicly, and "several exertions" to sell privately, the property was sold at a reduced price, without first reporting the facts to the chancellor and asking his permission to sell the property on terms proposed at private sale, instead of at public sale as decreed. The court said: "Can it be doubted that he [the chancellor] would have granted the authority they solicited? We think not. If then the trustees have exercised a power, which, if previously applied for, would have been granted, as it were, as a matter of course, a court of equity will, in the absence of proof showing the inexpediency and injustice of so doing, ratify the act done, in the same manner, as if, the requisite authority had been antecedently applied for and granted."

It is a genuine principle that "remaindermen are entitled to * * * the preservation of the property (21

C. J. 941), while the *cestuis que trustent* are entitled to such profits or benefits as the estate will produce, and the court will not approve a lease or investment which it does not consider to be for their advantage or protection. *Gould v. Chappell*, 42 Md. 466; *McCrory v. Beeler*, 155 Md. 456, 464, 142 A. 587, 590. There are in this state conditions and circumstances under which fiduciaries may not invest or deposit funds without first obtaining an order so to do, at the risk of incurring personal liability for loss.

In *Contee v. Dawson*, 2 Bland, 264, 289, Chancellor Bland held the trustee Dawson to be "held strictly accountable for all the consequences" of his failure to invest in such securities as the testator directed. See *Wayman v. Jones*, 4 Md. Ch. 500, and *Farmers' & Mechanics' Bank v. Wayman*, 5 Gill, 336, 353. In *Carlysle v. Carlysle*, 10 Md. 440, this court held a guardian to be strictly accountable for loss on an investment made without the written authority of the Orphans' Court, where a statute, Acts 1816, ch. 134, required the proceeds of sales of real estate of minors paid by trustees to guardians to be invested in such public stock or other permanent funds "as the Orphans' Court of the county, by whom such guardian or guardians shall have been appointed, shall direct." In *Zimmerman v. Fraley*, 70 Md. 561, 17 A. 560, 562, a trustee authorized by the court to sell bank stock for which an order was indispensable under the circumstances in that case, and invest in "landed security," used the proceeds to pay for land bought by the *cestui que trust*. In holding the trustee accountable, this court (McSherry, J.) distinguished the case from *Gray v. Lynch*, 8 Gill, 403, saying: "There the trustees, in the exercise of a fair discretion, and in perfect good faith, made an investment which would have been ratified by the court upon application; and the court of appeals, perhaps influenced by the particular circumstances, exonerated the trustees when loss ensued, though no such ratification had been procured." In *Zimmerman v. Fraley, supra,* the ground of the decision was, not

that the trustee had failed to obtain an order of the court, but that he had violated an order authorizing a change of investment.

In *Gilbert v. Kolb*, 85 Md. 627, 37 A. 423, 424, in which the trustee was held liable for the loss on an investment, it was held: "That the investment * * * was not a judicious investment, made in the exercise of a fair discretion,—such a one as a prudent man would have made dealing with his own affairs, nor such as a court of equity would have sanctioned at the time if advised of the circumstances as the trustee knew them."

In the case of executors, administrators, and guardians, under Acts 1831, ch. 315, (Code, art. 93, sec. 251) they are held to strict accountability as to investments or deposits, so that no exercise of private judgment, though made in good faith, would relieve their official responsibility. *Bacon v. Howard*, 20 Md. 191.

The rulings of the chancellor on the testimony, to which there were objections and exceptions upon the part of the appellants, we think were correct. The broad question of good faith, and sound judgment of the trustee, the fidelity with which he performed his duties, are matters in which broader inquiry may be had and more latitude in testimony may be allowed than in most other issues of facts.

The decree from which this appeal is taken should have ratified the investment instead of authorizing them *nunc pro tunc*. However, this is not a reason for reversal or for remanding the case for a restatement or correction of the decree.

For the above stated reasons, and in view of all the circumstances in the case, the decree of the chancellor will be affirmed.

*Decree affirmed, with costs to the appellee.*

PARKE and JOHNSON, JJ., dissent.