Tyson *vs.* Mickle, *et al.*—1844.

---

ELIZABETH TYSON *vs.* ROBERT MICKLE, AND OTHERS.—
*December*, 1844.

The trustees appointed by decree to sell real property, on the 21st June 1841, and 12th October 1842, offered it at public sale without success. A minimum price was then agreed on by the parties, and the property offered at private sale, without avail. The trustees and parties concerned, then agreed to sell, at private sale, for a fixed sum, if that could be obtained, and after unusual efforts, a purchaser was procured at that sum. Under such circumstances, as the Chancellor would have authorized the sale in the absence of all proof to impeach it, he properly ratified it, though one of the parties to the cause objected to it, as a sacrifice of his interest.

When a trustee exercises a power, which, if previously applied for, would have been granted, as it were, as a matter of course, a court of equity, in the absence of proof showing the inexpediency and injustice of so doing, will ratify the act done in the same manner as if the requisite authority had been applied for, and granted.

The report of a sale made by trustees of the court, and their answers to a petition impeaching their sale, must be credited, until over-ruled by proof.

Tyson *vs.* Mickle, *et al.*—1844.

Where a will devising real property authorized its sale upon the consent of the testator's widow, her consent, to a decree for the sale, is a sufficient compliance with the requisition of the will.

Improvement in price, arising from a general enhancement in value since the sale, is no ground for setting aside a sale made under a decree.

The ratification or rejection of a sale must depend on the state of circumstances existing at its date, not on subsequent contingencies; depreciation of property is at the risk of the purchaser, and he must reap the fruits of appreciation.

APPEAL from the Court of Chancery.

On the 25th March 1841, the appellant, by her next friend, *Thomas Tyson*, with others, filed their bill in Chancery against the appellees, praying a sale of certain real estate. After answers filed, on the 18th May 1841, the Chancellor decreed a sale of the property for such part of the purchase money in cash and on credit, as the trustees appointed by the decree should decide upon.

On the 18th March 1842, the trustees reported, that owing to the extreme depression of the property, they had not yet been able to sell, nor did they think that any future effort to make sale thereof, at the present time, would be prudent. That there is a large quantity of iron attached to the building upon the said property, and lying about the premises, and used in the construction of the machinery thereto, which is daily becoming of less value, and which, it is represented to your petitioners, it would be to the interest of all parties to dispose of at once, by a separate sale from the rest of the real estate; wherefore, your petitioners pray that they may be empowered by order of court, with the consent of the parties interested, to dispose of the said iron and machinery at once, and by a sale separate from the rest of the property. This petition the Chancellor dismissed.

On the 19th December 1843, the trustees, *Robert Mickle* and *G. L. Dulany*, reported to the Chancellor, that after giving bond with security, &c., they did, in pursuance of notice, attend on the premises, at *Ellicotts Mills*, on the 21st June 1841, at twelve o'clock, and then and there proceeded to offer the said real estate for sale, when not obtaining a bid, the

property was withdrawn, and offered at private sale; but not being able, in this way, to dispose of it, it was again offered at public auction, upon the terms and at the place aforesaid, on the 12th October 1842, after a longer notice than required by the decree had been given, &c., when the highest bid made for said property was $12,150. That the trustees, in conformity with the understanding existing between them and the other parties interested, including *Thomas Tyson*, the father and guardian of the infant, *Elizabeth Tyson*, that said property should be limited to $15,000, refused the said bid and again offered (advertised,) it at private sale, and made unusual exertions to obtain a purchaser on favorable terms, without success; when it was thought advisable by the trustees and parties interested, to sell the said property for $10,000, if so much could be obtained for it; that the assent of the said *Thomas Tyson*, father of the said infant, *Elizabeth*, is contained in a letter filed with the report marked A, and dated the 4th April 1843, and that said *Tyson*, between two and three months since, called upon one of the trustees, *Robert Mickle*, and expressed his desire that the property should be sold for the above sum. That the trustees, although they made every effort to dispose of the said property, could not obtain an offer for it even to the amount of $10,000, until they were offered that sum on the 4th of December 1843, by *W. P. Jenks*, which they accepted, and sold the said property to said *Jenks* for the sum of $10,000 in cash, on the final ratification of the sale, as will appear by the written contract of sale herewith filed. That said sale is approved of and desired by all parties interested, except the said *Tyson*, as will appear by their prayer, contained in paper B.; that since said sale has come to the knowledge of said *Tyson*, and notwithstanding his previous assent that $10,000 should be taken for said property, he objects thereto, and says it ought to have brought a larger sum, and has requested the trustees to report his objection to your honor, &c.

Exhibit A, filed with report.

"*Montgomery* county, 4th month 8, 1843, *R. Mickle* and *G. L. Dulany,* trustees.

"*R. Mickle's* letter of the 3rd inst. reached me yesterday, informing me of an offer you have had of $10,000 for the rolling mill property;—certainly a great sacrifice, but all things considered, am willing to let it go for that price, if you cannot possibly get more; of course you will have one cash payment,

Respectfully your friend,     THOMAS TYSON.

In case the purchaser does not intend it for an iron establishment, perhaps you can reserve the old iron and machinery,

T. T."

Exhibit B.—"I hereby offer *Grafton L. Dulany* and *Robert Mickle*, trustees for the rolling mill property at *Ellicotts Mills*, consisting of three tracts of land, say about 94 acres in all, with the buildings and appurtenances thereunto belonging, $10,000 in cash, on the ratification of this sale by the Chancellor of *Maryland*, and on delivery of a good and sufficient deed of conveyance of the same to me in fee.

December 4th, 1843.            W. P. JENKS.

Executed in duplicate."

"The above offer we hereby accept, subject to the ratification of the Chancellor.          G. L. DULANY,

R. MICKLE."

"The undersigned hereby approve of the above, and pray his honor, the Chancellor, to confirm the sale forthwith.

R. MICKLE, trustee of *Jona. Ellicott and Sons*,

J. M. GORDON, pres. of *the Union Bank* of *Md.*,

E. T. ELLICOTT, & Co.,

A. and J. ELLICOTT, & Co.,

ELIAS ELLICOTT."

This report was accompanied with usual affidavit of the trustees, and was confirmed *nisi*, the 19th January 1844.

After proof of publication of this order, the appellant, on the 9th February 1844, filed her petition, alleging that she was the owner of one third of the property sold, and that the decree does not authorise the trustees to sell said property at private sale, yet the said trustees have undertaken to sell the same at private sale. It is true, that the said *Thomas Tyson* did, in April or March 1843, sign a consent that the said pro-

perty should be sold, at that time, at private sale, but this had reference to a particular and special purchaser or purchasers, confined to that alone, and to that time, not intended to extend to any other or subsequent offer, and certainly did not extend to the offer of *Wm. P. Jenks,* and the sale to him now sought to. be ratified ; in accepting the said first mentioned offer, it was expressly understood by the said *Thomas Tyson,* that the very valuable rolling mill machinery, and iron belonging to the establishment, worth $1000, should be reserved; said sale was not made, and there was an end to the consent of the said *Thomas,* if, indeed, he had any right to consent.   Your petitioner alleges, in confirmation of what she has here stated, that afterwards, to wit, in the month of June or July 1843, an agreement was entered into between the said *Thomas* and others, the parties interested in said property, that the same should be sold at private sale, but said sale was expressly limited to the sum of $12,400, and no other agreement to sell at private sale was afterwards made; said agreement is now in possession of the said trustees, or one of them, and your petitioner begs leave that they may be required to produce it, and in case they do not, that she may be allowed to give parol evidence of its contents.   Your petitioner expressly alleges, that her consent, or that of her guardian and next friend, or of any others, having a right to act for her, was not obtained to the said sale for $10,000 to the said *Jenks.*   Your petitioner further alleges, that by the will of her grand-father filed in this cause, to wit, the will of *George Ellicott,* no sale is allowed to be valid without the consent of *Elizabeth Ellicott,* the widow of said *George;* and your petitioner avers, that although the said petitioner has consented that a decree should be passed for the sale of said property, yet she has, in no case, and in no wise, consented to any particular sale.   Your petitioner further alleges, that the sum of $10,000 for the said rolling mill property, with all the mill machinery, and iron belonging thereto, is far below its value, and would be a great sacrifice thereof, and that much more could have been, and can now be obtained for the same.   Your petitioner believes that

$15,000 would be a small price for such valuable property: consisting of water power sufficient for any operation, mill dam, rolling mill, a large number of valuable tenements, and eighty or ninety acres of land, in and near the thriving village of *Ellicotts Mills*, and on the Patapsco river. Your petitioner offers the above, as reasons why the said sale should not be ratified, and prays that the same may be set aside.

On the 9th February 1844, the Chancellor (BLAND,) ordered, that the matter of the foregoing petition stand for hearing on the 19th instant, under the order of 19th December last, allowing cause to be shewn against the ratification of the said proposed sale. On the 19th day of February 1844, the trustees filed their answer to the said petition, and alleged, that the assent of the said *Thomas Tyson* to a private sale of said property, at the sum of $10,000, was given, to enable and authorise these respondents to sell the same to any person disposed to purchase it at that price, and was not confined to time or persons; nor was there any understanding or any proposition to reserve the rolling mill machinery, or iron belonging to the establishment, out of said sale; and these respondents further state, that the said *Thomas Tyson*, subsequently to the date of said letter, and always afterwards, when he conversed with these respondents about the sale of said property, expressed his willingness to take $10,000 for the same, and lamented that they had not accepted that sum when it had been formerly offered. They further state, that some time in June 1840, *John S. Tyson*, the brother of the said *Thomas Tyson*, and his present solicitor, suggested to these respondents, as they could not get a price for the property here, that an advantageous sale might be effected in some of the eastern cities, and offered to make the effort if he were properly compensated therefor; and these respondents agreed with said *John Tyson* to allow him a handsome and graduated commission for selling the same, which was subsequently approved of by the said *Thomas Tyson*, representing the complainant and the other parties interested therein; which agreement they have ready to be produced to this court, if the same be that to which the complain-

ant refers, the portion of said agreement which is cancelled and partly obliterated, was struck out by these respondents. These respondents were greatly surprised to find any opposition made to said sale by the said *Thomas Tyson*, especially for the reasons assigned in said petition. They believed, and now believe, that the price of $10,000 was as good as could have been obtained for that property when it was sold. It had been in the market at that price for some months, and it was generally known, as these respondents believe, that it would have been sold for that sum; whether or not more could be obtained for it, since it was agreed to be sold, these respondents cannot say, but they believe property, generally, has advanced since then. These respondents are only anxious to discharge their official duties to the satisfaction of this court, and await its further order and direction in the premises.

The agreement refered to in the within answer, was as follows:

"I propose to undertake the sale, of the rolling mill property, out of the State of *Maryland*, on the following terms, viz:

If they should be sold by me for the sum of

| | | | | |
|---|---|---|---|---|
| $20,000, I am to receive, as a commis., | - - | $2,000 |
| From 20,000 to 19,000 " " | - - | 1,800 |
| " 19,000 to 18,000 " " | - - | 1,600 |
| " 18,000 to 17,000 " " | - - | 1,400 |
| " 17,000 to 16,000 " " | - - | 1,300 |
| " 16,000 to 15,000 " " | - - | 1,000 |
| " 15,000 to 14,000 " " | - - | 800 |
| " 14,000 to 13,000 " " | - - | 600 |
| " 13,000 to 12,000 " " | - - | 400 |

If I should be the means of procuring a purchaser in the State of *Maryland,* I shall expect half-commission at the above rates, the trustees to have the privilege of selling, at any time, without my agency; should the trustees, without my agency, procure a purchaser out of the State, I shall expect my expenses and charges to be defrayed, to an amount not exceeding one hundred and fifty dollars. This agreement to last sixty days from the date hereof.

June 16th, 1843.                    JOHN S. TYSON."

"*Baltimore*, 16th June 1843.—We agree to the within terms. *Andrew Ellicott*, for *E. T. Ellicott & Co.*, and *A. & J. Ellicott & Co.*

*J. M. Gordon*, for *Union Bank of Md.*

*R. Mickle* trustee of *Jona. Ellicott & Sons.*

*Thomas Tyson*, guardian."

On this petition, answer, and exhibit, on the 19th February 1844. The Chancellor (BLAND,) finally ratified the sale, and the said *Elizabeth Tyson* appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS and MAGRUDER, J.

By GLENN and J. JOHNSON for the appellants, and
By ALEXANDER and DULANY for the appellees.

DORSEY, J., delivered the opinion of this court.

The trustees report shews, that "on the 21st of June 1841, the property was offered at sale, pursuant to the decree; but being unable to obtain any bid for it, it was withdrawn and offered at private sale. And not being able to dispose of it in this way, it was again advertised and offered for sale, as directed by the decree, on the 12th of October 1842; and being unable then to sell it at the price agreed on, as its minimum value, by the trustees and all the parties interested, the trustees again advertised it at private sale, and made unusual exertions to obtain a purchaser on favorable terms, without success; when it was thought advisable by the trustees and the parties interested, to sell the said property for ten thousand dollars, if so much could be obtained for it." "That the said trustees, although they made every effort to dispose of said property, could not obtain an offer for it, even of the amount of ten thousand dollars, until they were offered that sum, on the 4th of December 1843, by William P. Jenks."

Had the trustees, instead of accepting the offer and making the sale, as they did, have reported the aforegoing facts to the Chancellor, and asked his permission to sell the property on the terms proposed, at private, instead of public sale, as di-

rected by the decree, can it be doubted that he would have granted the authority they solicited? We think not. If then the trustees have exercised a power, which, if previously applied for, would have been granted, as it were, as a matter of course, a court of equity will, in the absence of proof shewing the inexpediency and injustice of so doing, ratify the act done, in the same manner, as if, the requisite authority had been antecedently applied for and granted.

Were there sufficient grounds before the Chancellor to have warranted his refusal to ratify the sale in question, is then, the enquiry before us? No testimony has been taken to sustain the allegations, urged for that purpose, in the petition seeking to vacate the sale; although almost all of them that are material, have been denied on oath, in the answers of the trustees; which answers and the reports of the sale, made by the officers of the court, (who are presumed to have no interest in the subject matter,) must be credited, until over-ruled by proof.

The assent of the grand-mother of *Elizabeth Tyson*, to the Chancellor's decree, is a sufficient compliance with the requisition of the will of her grand-father, *George Ellicott*. The assent of *Thomas Tyson*, the father and next friend of *Elizabeth Tyson*, to the sale which has been made of the property, by the trustees, we think fully established by their report and answers.

The allegation that, at the time of the sale made, a much larger sum of money could have been obtained for the property, being wholly unsustained by proof, and explicitly denied by the answers, can be of no avail to the appellant. Nor can it redound to her benefit, that the property, from a general enhancement in value, since the sale, would now sell for more money. The ratification or rejection of the sale must depend on the state of circumstances existing at its date; not on subsequent contingencies. Suppose, instead of appreciating, the property had greatly depreciated since the sale, who would have borne the loss? The purchaser, unquestionably. Upon the plainest principles of justice, then, he must reap the fruits of its appreciation.

The order of the Chancery Court, of the 12th of February 1844, ratifying and confirming the sale, made and reported in this case, is affirmed with costs.

ORDER AFFIRMED, WITH COSTS.