JANE M. KELSO, by her next friend JOHN THOMAS
KELSO *vs.* EDWIN JESSOP, and others.

*Trustee's sale—A private Sale made under a Decree directing
a Public sale.*

A decree for the sale of property directed the trustee to sell at public
sale. The property was offered at public sale and withdrawn, the
highest bid being $65 per acre. The trustee, who was himself one
of the parties interested in the property, afterwards sold it privately
to K. without the assent of the other parties in interest, for the price
at which it had previously been withdrawn. None of the other
parties were consulted by the trustee in regard to the sale, and all
of them when informed objected to its ratification. The trustee in
his report of sale informed the Court that a *bona fide* offer of a
larger price was made to him by a responsible party on the day
after the acceptance of the offer of K. All the testimony in the
case, including that of the trustee himself, showed that the prop-
erty was sold for much below its actual value, and the trustee
further testified " that he is convinced that considerably more than
$65 per acre can be obtained for the property if offered at public
sale." On exceptions filed to the ratification of the sale, it was
set aside by the order of the Court below, and on appeal from that
order it was HELD :

1st. That the Court must necessarily act upon the case as actually
presented by the record, upon the facts then made apparent to the
Court, and not confine its attention merely to the consideration
of what might reasonably have been the judgment and opinion of
the trustee at the time he accepted K's offer.

2nd. That if, from information afterwards obtained by him, and made
known to the Court when its action was invoked, it appeared that
injustice would be done to the parties who alone were interested in
the property, by ratifying the sale, it ought not to be ratified.

3rd. That if this sale had been made in conformity with the terms
prescribed by the decree, nothing that appeared in the record
would justify the Court in setting it aside.

4th. That although a provision in the will of the testator of the
property, directing that the property should be sold at public sale,

did not deprive the Court of all discretion over the sale, yet it was not to be disregarded altogether in passing upon the question of the ratification of the sale reported.

5th. That the order of the Court below, setting aside the sale, ought to be affirmed.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STONE, MILLER, ALVEY, and IRVING, J.

*John T. Ensor*, and *Isaac D. Jones*, for the appellant.

*John I. Yellott*, for the appellees.

BARTOL, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County, setting aside a sale of a farm made by a trustee appointed by a decree of that Court. It appears from the record that the late Joshua Jessop by his last will, directed that after the death of his widow, his estate should be "disposed of at public sale, the time and place of such sale having first been duly published and advertised, so that all my heirs as well as others, may have a fair and reasonable opportunity of having notice that such sale is to take place."

The will directs the disposition to be made of the proceeds of sale, but these provisions are not material to be noticed. No one being empowered by the will to sell the real estate, it was necessary to institute proceedings in Chancery for the purpose of having it sold, and carrying into effect the provisions of the will. All the parties in interest were made parties to the proceeding, and a decree

was passed on the 4th day of October 1878, appointing Edwin Jessop, the surviving executor, *trustee* to sell the real estate of which the testator died seized; the decree prescribed the public notice to be given of the sale, and the terms thereof.

The following facts appear from the report of the trustee and the testimony in the record. After giving the notice prescribed by the decree, by publication in two of the *weekly newspapers* in the county, in the *Daily Sun* published in Baltimore City, and by handbills extensively circulated, the trustee offered the property at public sale on the 12th day of November 1878, and received a bid of $65 per acre; the trustee and other parties interested considering that bid too low, the property was withdrawn. The trustee then employed a real estate broker, who advertised the property extensively, and he and the trustee used every effort in their power to effect a sale; but failed to secure any offer of more than $12,000. Between the 20th and 30th of December 1881, Charles M. Jessop, and John G. Booth (the broker) called at the dwelling of Mrs. Kelso, the appellant, in Baltimore, and offered the land to her for $65 per acre, requiring an answer by December 31st. On the 30th day of December, Mrs. Kelso went to the farm accompanied by Mr. Whitson, her agent and attorney; there she saw Charles M. Jessop, Edwin Jessop, and Cecilia P. Johnson, (Edwin the trustee was confined to his room by sickness,) she made an offer of $60 per acre, to Edwin Jessop, who requested time to consult other heirs who were in the house, promising to give an answer in the afternoon. In the afternoon the offer of $60 was declined. Charles M. Jessop being present, made the remark that it could not be sold for less than $65 per acre.

Afterwards, on the same day, she offered to the trustee $65 per acre; he accepted the offer and agreed to sell the land to her at that price. She proposed then to pay $500, the cash deposit required by the decree, and to enter into

a written contract; this was deferred at the request of the trustee, who assured her that the sale would be carried out in good faith. Three days thereafter, on the 2nd of January 1882, she made the cash payment of $500, and a written agreement was signed by her and the trustee. According to this agreement the land sold consists of three contiguous parcels containing in the aggregate 200 *acres* 18 *perches* more or less, the actual quantity to be ascertained by a survey made at the expense of the purchaser. The survey has not been made. The trustee's report states, that there are estimated to be 197 acres, making the aggregate of sale $12,805. By the agreement, the growing crops and the provender on the land were not included in the sale. On the day after the acceptance of Mrs. Kelso's offer, viz., on the 31st day of December 1881, Charles M. Jessop offered $13,400 for the land. The trustee states in his report, that he felt constrained to refuse said offer, believing himself bound to close the sale upon the offer made by Mrs. Kelso. He reported these facts to the Court for its action, and further stated that the said sale was fairly made and for the most money he could obtain except as above stated.

The following exceptions to the ratification of the sale were filed by all the parties in interest, the devisees and legatees named in the will, except Edwin, the trustee, some of whom are infants:

"1st. Because the price for which said property sold, was grossly inadequate, and much less than it was worth.

"2nd. Because the trustee was required by the terms of the decree in this case to sell the property at public sale, and the same was sold at private sale, to the great injury of the exceptants.

"3rd. Because if said property had been sold at public auction, as required by the terms of the decree, and by the will of Joshua Jessop, deceased, it would have sold for more than it did.

"4th. Because there is a standing bid for the property of $600, more than that obtained by the trustee, as shown by his report of sale, and it would be a great injury to, and a great hardship upon the parties interested in the property to have the said sale ratified."

The trustee in his answer to the exceptions after referring to what had been stated in his report, says, "as to the 1*st exception* filed, that 'he believes the price obtained for the property to be a low one, and that the same is well worth *fifteen* to *sixteen thousand dollars.*'" As to the 2*nd exception,* he states that "he believed, upon the advice of his attorney, that he had the right to sell at private sale, having once unsuccessfully offered the property at public auction, provided those in interest did not suffer thereby; that at the time he accepted the offer of Mrs. Kelso, he believed such action was for the best interests of all parties, and was at the time wholly ignorant of his ability to get more than she offered."

And as to the 3*rd exception* he says, that "when he accepted said offer, he believed it was fully as much as he could get at public sale, and he was anxious to avoid the costs of a public offer of the property. He is now convinced, however, that more than $65 per acre can be obtained for the property, if offered at public sale."

He further answers, that "the offer of $13,400 for the property is a *bona fide* one, and he has good reason to believe more than that could be obtained, if the property should be offered at public auction," * * * * * * "the information upon which is based the opinion, that even more can be obtained at a public sale, has been obtained subsequent to the acceptance of Mrs. Kelso's offer. He further states, that none of the parties in interest were consulted by him with reference to accepting the offer of $65, except Charles M. Jessop, who agreed that the property should not be sold for less, and at the same time requested the trustee to keep the matter open for a few

Kelso *vs.* Jessop, *et al.*

days, and the said Charles M. also requested Mr. Whitson the agent for Mrs. Kelso, to get her to keep the matter open for a few days, and stated that he thought the heirs who were absent ought to be consulted. It was agreed that Mrs. Kelso have a week to consider the matter, and after going to their carriage, they returned to the affiant's room, and said they would take the property at $65 per acre."

The only testimony in the record as to the value of the property was produced by the exceptants. Two disinterested witnesses, *Thomas Pearce* and *Samuel M. Rankin*, testify that they consider $65 per acre a low price, and express the opinion that the property is worth $80 per acre. Charles M. Jessop testifies that the farm is worth $80 an acre, and is willing to give $600 more than it sold for. Mrs. Johnson, another exceptant, states that "she did not give her assent to the sale, was not consulted, regrets that the sale was made privately, and has the best reasons for believing that had the property been offered at public sale, it would have brought more money, and thinks the price offered by Mrs. Kelso a low one, knows the offer made by Charles M. Jessop is a *bona fide* one, and has good reason to believe that if the property is offered at public sale, even more than he offers can be obtained for it."

The principles which govern Courts of equity in this State, in deciding upon the ratification of sales made by trustees are well settled. They are clearly stated by the late Chancellor in *Latrobe vs. Herbert*, 3 *Md. Ch. Dec.*, 377, and we cannot do better than to quote his language:

"When a sale is made in all respects according to the terms of the decree, and neither fraud, mistake nor misrepresentation can be alleged against it, the faith of the Court is pledged to ratify and perfect it; but when the terms are departed from, there cannot possibly be any sort of obligation on the part of the Court to sanction it. The

trustee is the mere agent of the Court, and if he does not conform to the authority delegated to him, it is for his principal to say, when he makes report of his proceedings relative to his agency, whether it will ratify his act as such. His instructions are contained in the decree, open to the inspection of all parties interested, and if he does not follow them, certainly no one dealing with him has a right to complain if the Court should withhold its sanction when called on to confirm his act." This language is strictly applicable to the present case. There is no doubt of the perfectly good faith of the trustee in all his proceedings, and the sale is not impeached by reason of any misconduct on his part; but in considering the objections to its ratification, it must be borne in mind that it was not made in conformity with the terms of the decree. And as correctly said by the Chancellor in the case before cited: "When the trustee deviates from the terms prescribed by the decree, there can be no sort of doubt, that objections to its ratification will be allowed to prevail, which if urged against a sale made in conformity with the terms, would be disregarded; and perhaps no deviation could render a sale more obnoxious to objection, than selling at *private* when the decree directs a *public* sale."

In many cases, private sales made by trustees acting under decrees directing the sale to be public, have been ratified, where it appeared that the attempt to dispose of the property at public sale had been fairly made, and had proved ineffectual; upon the principle stated in *Tyson vs. Mickle*, 2 *Gill*, 384, "that if a trustee has exercised a power which, if previously applied for, would have been granted, as it were, *as a matter of course*, a Court of equity will, in the absence of proof showing the inexpediency and injustice of so doing, ratify the act done, in the same manner as if the requisite authority had been antecedently applied for and granted."

This principle has been invoked by the appellant in the present case. But it by no means follows, that if application had been made to the Court, by the trustee, beforehand, the Court would, as a matter of course, have authorized him to dispose of the property at private sale, for the price offered by Mrs. Kelso; if that application had been accompanied with a full statement of the facts now disclosed by his report, and the testimony in the record. It is true, as stated in *Tyson vs. Mickle*, that the ratification or rejection of the sale must depend ordinarily on the state of circumstances existing at its date; not on subsequent contingencies. But where, as in this case, the sale was made privately, without the assent of the parties in interest, and all of them, except the trustee himself, unite in objecting to its ratification;—where, in the report of sale, the trustee informs the Court that a *bona fide* offer of a larger price was made to him by a responsible party, on the day after the acceptance of the offer of Mrs. Kelso;—and where all the testimony in the case, including that of the trustee himself, shows that the property was sold for much below its actual value, and the trustee further testifies, that "he is convinced that considerably more than $65 per acre can be obtained for the property, if offered at public sale;"—it seems to us, that great injustice would be done by ratifying the sale reported. The Court must necessarily act upon the case as actually presented by the record, upon the facts then made apparent to the Court, and not confine its attention merely to the consideration of what might reasonably have been the judgment and opinion of the trustee, at the time he accepted Mrs. Kelso's offer. If from information afterwards obtained by him, and made known to the Court, when its action is invoked, it appears that injustice will be done to the parties, who alone are interested in the property, by ratifying the sale, it ought not to be ratified.

The English practice of "*opening biddings*" has never been adopted in this State—as was said in *Andrews vs.*

*Scotten,* 2 *Bland,* 644, 671—and *Cohen vs. Wagner,* 6 *Gill,* 251—but that was said in reference to sales made in conformity with the terms prescribed by the decree. If this sale had been so made, nothing that appears in the record would justify the Court in setting it aside; but it seems to us, that coming before us as this case does, the evidence that the actual value of the land is much greater than the price at which it was sold, and that it will bring considerably more if offered at public sale, is entitled to great weight. This is not caused by an accidental appreciation in price since the sale, but as it appears from the proof, was the actual state of things when Mrs. Kelso's offer was accepted, became known to the trustee immediately afterwards, and ought perhaps to have been known to him at the time.

This is a case in which a public sale was directed not only by the terms of the decree, but also by the express direction in the testator's will; and although we do not think the provision of the will in this respect, deprives the Court of all discretion over the sale, yet it is not to be disregarded altogether in passing upon the question of the ratification of the sale reported.

Upon a careful consideration of the whole case, for the reasons stated, we think the order of the Circuit Court ought to be affirmed.

*Order affirmed, and*
*cause remanded.*

(Decided 14th July, 1882.)