ALICE VIRGINIA GILBERT, by Her Husband and
 Next Friend, J. MILTON GILBERT, *vs.* DAVID
 KOLB, Trustee.

*Trusts—Liability of Testamentary Trustee for Loss Arising From
 an Investment not Made in the Exercise of a Sound Discretion.*

When a testamentary trustee is clothed with discretion in making
 investments, and such trustee, acting with due diligence, and in
 accordance with the powers conferred upon him, but without the
 direction of a Court, makes an investment, he will not be personally
 liable should a loss ensue therefrom. But if the investment made by
 such trustee is upon inadequate security and is one which an ordi-
 narily prudent man would not have made, then he is liable for a
 consequent loss.

In making investments, a trustee is not entitled to rely upon the advice
 of his solicitor as to the value of the property.

A sum of money was bequeathed to a trustee in trust to invest the
 same in some safe securities with power to reinvest. The trustee
 was also the executor of the will and as executor he sold a parcel of
 land belonging to the estate and took for the entire purchase money
 a mortgage upon the land sold and a second mortgage upon a small
 farm. The funds of the trust estate were invested in these mort-
 gages and upon foreclosure there was a loss to the estate of about
 one-third of the amount invested. The value of the property cov-
 ered by the mortgages was shown to have been less than the amount
 of the mortgages at the time they were executed. *Held*, that the
 investment so made by the trustee was not made in the exercise of
 a fair discretion such as an ordinarily prudent man would exercise
 in his own affairs and that the trustee was consequently liable for the
 deficit.

Appeal from a decree of the Circuit Court for Frederick
County (McSherry, C. J.)

The cause was argued before Bryan, Fowler, Briscoe,
Page, Roberts, Boyd and Russum, JJ.

*Milton G. Urner* and *Hammond Urner*, for the appellant.
The appellant produced seven witnesses, all men of age

and experience, who have resided many years in New London, or its immediate vicinity, and who were thoroughly familiar with the condition and value of the property covered by the $3,500 mortgage. Their judgment is unanimous that Keller took the mill at a valuation of $500 to $1,000, more than it was worth ; that the mill and its trade had then greatly deteriorated, and that the investment of $3,500 in a mortgage on this property and the 52-acre farm, subject to the prior lien of $1,200, was not safe or prudent.

The witnesses produced by the appellee to testify as to the value of the property, all reside, with the exception of W. B. Keller, a son of Jacob Keller, at a distance of one to eight miles from New London, and had only a casual acquaintance with the property in question. But even if their testimony is to be considered in connection with the more reliable knowledge of the appellant's witnesses, the average of all their valuations is $3,020 for the mill, and $2,040 for the farm in 1889, a total of $5,060. With the $1,200 first lien deducted, there remains $3,860 of value as security for the $3,500 investment. In the face of this result arrived at by according equal credit to the testimony of all the witnesses, it can hardly be seriously claimed that the investment of $3,500 in a second mortgage on this property, with a margin of only $360, was safe and judicious at the time it was made.

The Courts have established certain standards of prudence by which the responsibility of trustees in making investments is to be measured. Their discretion in Maryland is limited to investments in " government stocks, or a mortgage on *unincumbered* real estate, or good bank stock." *Gray* v. *Lynch*, 8 Gill, 422.

Investments of trust funds upon second mortgages have been universally condemned. *Wilson* v. *State*, 33 N. J. Eq. 532 ; *Gilmore* v. *Tuttle*, 32 N. J. Eq. 611; *Bogart* v. *Van-Velsor*, 4 Edw. Ch. (N. Y.) 718 ; *Lockhart* v. *Reilly*, DeG. & J. 475; 1 *Perry on Trusts*, 568 ; *Lewin on Trusts*, 330 ; *Hill on Trustees*, 538 ; *Norris* v. *Wright*, 14 Beavan, 291.

In mortgage investments of trust funds two-thirds of the value is the limit of prudence. *Bogart* v. *Van Velsor,* 4 Edw. Ch. (N. Y.) 718; *MacLeod* v. *Annelsey,* 16 Beavan, 604; *Ingle* v. *Partridge,* 34 Beavan, 412; *Stickney* v. *Sewell,* 1 Mylne & Cr. 14; *Philipson* v. *Gatty,* 7 Hare, 516; 1 *Perry on Trusts,* 568; *Lewin on Trusts,* 325.

In the case of manufacturing property one-half only of the value can be safely ventured. *Royds* v. *Royds,* 14 Beavan, 54; *Perry on Trusts,* 568; *Lewin on Trusts,* 325; *Hill on Trustees,* 538.

But aside from the rules of prudence laid down by the Courts, it is almost impossible to conceive that a prudent and diligent investor would advance $3,500 on such a mortgage security as was taken in this case. A country mill, notoriously subject to rapid depreciation, just purchased for $3,500, and a small farm valued by the appellee's witnesses at less than $2,500, with a $1,200 lien upon it, would obviously not have been approved by the Court as adequate security for $3,500 of the trust funds, if the trustees had sought its guidance before making the investment. Even if the security could have been regarded as sufficient in 1889, the certain prospect of depreciation in country mills would unquestionably have induced the Court to withhold its approval. Investments should be made by trustees with a view to durable and permanent security. *Gray* v. *Lynch,* 8 Gill, 422.

It is confidently submitted that the only conclusion to be reached upon an examination of the record is that the mortgage security taken by the trustee for the $3,500 investment was, in fact, inadequate. The only question to be considered is whether the trustee was sufficiently prudent and diligent in ascertaining the value of the security to exonerate him from liability for the loss. The learned Judge who heard this case below, in his opinion, says: " Whether he used such diligence in making this investment as his duty required, is the question that perplexes me." The appellant asserts that the trustee has, from the beginning, been

negligent and reckless in his management of her estate. All the investments, as originally made, were upon mortgages taken from purchasers of lands forming part of the testator's estate, the amount advanced in each instance being far beyond the limit of prudence. These trust funds were simply used by the trustee, who was also the acting executor, to facilitate the sale of the real estate left by the testator, as a larger price could be obtained when the offer was simultaneously made to take a mortgage for almost, or quite, the amount of the purchase money.

In making the particular investment under consideration the conduct of the trustee was characterized by the most supine indifference. He testifies that he had no personal knowledge as to the value of the property upon which he proposed to take the mortgage, and yet he made not the slightest effort to ascertain its value. The only information on the subject he had at the time he made the loan were the representations of the mortgagor. The authorities are uniform to the effect that investments thus made, and without independent investigation, are at the personal risk of the trustee. *Lewin on Trusts*, 324; *Fry* v. *Tapson*, 28 Ch. Div. 279; 1 *Perry on Trusts*, 571; *Norris* v. *Wright*, 14 Beavan, 301; *Macleod* v. *Annesley*, 16 Beavan, 607; *Budge* v. *Gummow*, 7 L. R., Ch. App'ls, 719; *Ingle* v. *Partridge*, 34 Beavan, 414.

The statement in the opinion of the Court below that the trustee "consulted his solicitor, Mr. Ross, who appears to have informed himself," was based upon a misapprehension of the facts, as the record clearly shows that Mr. Ross had no other information at the time of the investment than that imparted by Keller, the mortgagor, and his inquiry of Wm. Downey was made long after, when the mortgagee was about to foreclose the mortgage. In *Macleod* v. *Annesley*, 16 Beavan, 607, the Master of the Rolls, in holding a trustee responsible for an investment imprudently made upon inadequate mortgage security and without independent investigation as to its value, says: " It was his duty, when

exercising the office of trustee, to ascertain the exact and accurate state and value of the property, before he advanced the trust money ; and it is not sufficient for him to say that he left it to other persons to do so."

In *Gilmore* v. *Tuttle*, 32 N. J. Eq. 611, the instrument creating the trust provided that the trustee should not be liable except for "wilful and intentional breaches of the trust." The trustee sold part of the real estate belonging to the trust and took second mortgages, under the advice of counsel, to secure the purchase money. A loss ensued, and it was held that neither the exemption clause just quoted, nor the fact that he consulted his counsel, exonerated the trustee from liability for the loss. In *Hopgood* v. *Parkin*, 11 L. R. Eq. 74, the trustees, acting upon the advice of their solicitor, made an investment upon what they believed to be a first mortgage. It was subsequently discovered that there was a prior mortgage in existence. LORD ROMILLY, M. R., in charging the trustees with the loss, said : " First, it is material to consider the course pursued by the solicitor of the trustees. It is true that his conduct is not theirs ; but he is appointed by them, he is their agent for the management of the affairs of the trust, and if he misconducts himself through ignorance or negligence, or wilfully, he is answerable to the trustees, and they cannot, in my opinion, throw any of the loss thereby occasioned upon the *cestuis que trust.*"

In *Fry* v. *Tapson*, 28 Ch. Div. 268, the trustees invested 5,000 pounds in a mortgage upon a house and grounds in Liverpool. The trustees, by the advice of their solicitors, employed a certain surveyor to inspect the property and report as to its value. He reported the property to be worth 7,000 or 8,000 pounds, and upon this information the investment was made. A loss having resulted, the trustees sought to shield themselves behind the advice of their solicitors ; but it was held that as it was not the ordinary business of solicitors to recommend valuers of property, so there was no evidence of prudence in obtaining and acting

under the advice of the solicitors.    The trustees were re-
quired to make good the loss.    We cite further upon the
general principle that the advice of a solicitor as to the suffi-
ciency of securities does not exonerate the trustees.  *Lock-
hart* v. *Reilly*, 1 DeG. & J. 469 ;  *Peers* v. *Ceeley*, 15 Beavan,
211 ;  *In Re Knight's Trust*, 27 Beavan, 49.    While we do
not concede that the trustee acted in good faith in making
this investment, yet " good faith and honest intentions will
not protect men in the performance of a trust when they de-
part from prudential rules which the experience of others
in similar transactions have approved as the only safe guides."
*Bogart* v. *VanVelsor*, 4 Edw. Ch. 724 ;  *Dickinson's Appeal*
(Mass.) 9 L. R. A. 281 ;  *Fry* v. *Tapson*, 28 Ch. Div. 281.

*John S. Newman* (with whom was *Charles W. Ross*, on
the brief), for the appellee.

RUSSUM, J., delivered the opinion of the Court.

William Kolb, of Frederick County, died in 1889, leav-
ing a will by which *inter alia* he bequeathed to his son,
David Kolb, who was also one of the executors named in
the will, fifteen thousand dollars, " in trust to invest the
same in some safe security or securities, either public or
private, with full power in said trustee to reinvest the same
from time to time as the exigencies of the trust may re-
quire," the income to be paid to his daughter, Alice Vir-
ginia Gilbert, the appellant, during her life, and after her
death, the *corpus* of the estate to be paid to her children
then living, and to the descendants of any child or children
who may be living at her death, to be equally divided be-
tween them *per stirpes*.

There was a mill property known as the " New London
Mills," which belonged to the testator's estate, which the
executors, in September, 1889, sold to one Keller, for
$3,500.    No part of the purchase money was paid, but the
executors conveyed the property to Keller, and took from
him a mortgage thereon for the entire purchase money at

5 per cent. interest, and also a mortgage on a farm of 52 acres, subject to a prior mortgage of $1,200, bearing 6 per cent. interest. Keller, the mortgagor, died in 1894, and the trustee, on March 16th, 1895, filed his petition, *ex parte*, asking the Circuit Court for Frederick County, in Equity, to take jurisdiction of the trust and approve his investments, which was done. Afterwards, the trustee and mortgagee foreclosed the mortgage and sold both properties, buying them in as trustee, the mill for $2,000, and the farm for $260, subject to the prior mortgage of $1,200. After the foreclosure proceedings were completed, the trustee filed his petition asking to be relieved of the trust, and filed therewith a statement showing a loss of $1,392 to the trust estate. On this petition the Court passed an order releasing the trustee from the further execution of the trust, and Hammond Urner was substituted as trustee, upon the petition of the appellant, and the trust estate transferred to him, except the investment in the Keller mortgage, in relation to which testimony was ordered to be taken; so that the sole question before us is in relation to the Keller investment. The learned and distinguished Judge who decided this case in the Court below, after referring to the difference which may exist between the discretion possessed by a testamentary and a conventional trustee—that is, a trustee appointed under a decree, clearly and correctly lays down the legal principles which control it as follows :

"Generally speaking, where there are no restrictions imposed by the testator, a trustee named by him is vested with a discretion which a conventional trustee does not ordinarily possess, and where a discretion is expressly conferred by will, its exercise in good faith and with proper diligence, though resulting in a pecuniary loss, presents quite a different situation from that which would arise were the loss to follow from an unauthorized act, or from the exercise of an assumed discretion not entrusted to a conventional trustee. And this is so because the power of the one is broader than the power of the other, and the accountability of each

is measured by a totally different standard. Loss resulting from an act of a conventional trustee, though the act were done in the utmost good faith, if it were not an act permitted by the instrument creating or defining the trust, or were done without proper judicial sanction, would fall on the trustee, who having no discretion at all, or a very limited one, is justly held to a rigid accountability without the slighest regard to the motives that may have influenced his action, or the prudence he displayed in performing it. *Zimmerman* v *Fraley*, 70 Md. 561. But where the testator has selected a particular person as trustee, and has clothed him with a discretion in regard to making investments, and confided in this behalf to his judgment and integrity, and such trustee in good faith, and with diligence, makes an investment of trust funds, strictly in accordance with the power conferred upon him, or in any way that a Court of Equity would have sanctioned at the time, if advised of the circumstances as the trustee then knew or honestly believed them to be, will be exonerated should a loss ensue, though he failed to invoke the guidance of the Court, or to procure its subsequent ratification of the step he took. *Tyson* v. *Mickle*, 2 Gill, 376 ; *Cunningham* v. *Schley*, 6 Gill, 208 ; *Gray* v. *Lynch*, 8 Gill, 403."

In applying these legal principles to the facts contained in the record we are compelled to differ with the learned Judge below. We are of the opinion that the investment made by David Kolb, trustee, was not a judicious investment, made in the exercise of a fair discretion, such an one as a prudent man would have made dealing with his own affairs, nor such as a Court of Equity would have sanctioned at the time, if advised of the circumstances as the trustee knew them, or had reason to believe them to be, especially as the facts in the record show that the trustee would be benefited as residuary legatee, by getting a large price for the property sold. This view of the case is, we think, fully sustained by the testimony of the trustee. In making the investment he was under the duty to use due diligence

(1), to see that the title was valid, and (2), that the value of the property at the time of the loan is such as would in all probability be adequate security for the repayment of the loan, whenever the mortgage should be called in. The criterion by which the value is to be ascertained is the estimate of men of ordinary prudence, who would deem it safe to make a loan of the same amount of their own money, on the same property. This is what a Court of Equity would have required of the appellee had it been applied to at the time to sanction the investment. By his own confession the appellee had failed to sell this mill property to Kinna for $3,500, because he could not raise the money on it, and yet he sold it to Keller for that sum, taking as security a mortgage on the property for the full amount, and the additional security of a second mortgage on a farm of 52 acres, subject to a prior lien of $1,200, at 6 per cent. interest, and of the value of which he had no knowledge, except what Keller, the mortgagor, told him. If the testimony of the appellee's witnesses who knew the property, and are capable of correctly estimating its value be referred to, it clearly appears that, taking a fair average of their estimates, there was, after deducting the first mortgage on the farm, no such margin as would justify a prudent man in making the investment. At the average valuation of appellee's witnesses, there was a margin of not exceeding four hundred dollars, when, if common skill, caution and prudence had been exercised, there should have been, at least, three times that amount. This is the most favorable view that can be taken of the appellee's conduct. The plea that he consulted his solicitor, Mr. Ross, does not aid him, because, by his own admission, he does not know whether Mr. Ross had ever seen either the mill or the farm. It was proper that the appellee should consult Mr. Ross as to the *title*, and he was justified in relying on his opinion on that subject, but Mr. Ross' opinion as to the *value* of the property should not have been relied on any more than the opinion of any other person who knew nothing of the property. No

Court of Equity would have approved an investment where the value of the property was estimated by persons who had confessedly no knowledge of the property, even with the superadded estimate of the party to whom the loan was to be made. Such is this case.

The appellee has not acted in this matter as a prudent man would act in the management of his own affairs. Being the acting executor he used the trust funds to facilitate the sale of the real estate left by the testator, and, by taking a mortgage for the entire purchase money, obtained a larger price than he could otherwise have received. His interest as executor was to swell the estate by large sales; and, in taking care of that interest, he failed in his duty as trustee by subordinating that duty to his interest as executor. Instead of making the investment required by the will in good faith, and as a prudent man would have done, had he been lending his own money, he risked the trust fund upon an insufficient security, hoping that the good character, steady habits, and capacity of Keller, the mortgagor, would furnish additional security upon which he could rely for the repayment of the loan. The death of Mr. Keller made it necessary to sell the mortgaged property, which has resulted in a loss to the trust estate, and having by his own admissions failed in his duty to the *cestuis que trust* he ought in equity and good conscience be required to assume the loss that has been sustained.

It follows that the decree appealed from must be reversed and the cause remanded for further proceedings in accordance with this opinion.

*Decree reversed and cause remanded.*

(Decided April 30th 1897).